*In re* CUSTODY OF ANGELA MENCONI, a Minor—(Ozzie Menconi, Sr., *et al.*, Petitioners-Appellees, *v.* Ozzie Menconi, Jr., Respondent-Appellant).

First District (1st Division)   No. 83—482

Opinion filed August 22, 1983.

John T. Carr and Mel Sloan, both of Chicago (Jerome Marvin Kaplan and Linda S. Kagan, of counsel), for appellant.

Feiwell, Galper & Lasky, Ltd., of Chicago (David H. Levy and Andrew D. Eichner, of counsel), for appellees.

Georgiana Daskais, of Chicago, guardian *ad litem*.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Respondent, Ozzie Menconi, Jr., appeals from a judgment of the circuit court awarding permanent custody of his eight-year-old daughter, Angela, to the child's grandparents, Ozzie Menconi, Sr., and Leota Menconi (petitioners). The record reveals that Angela was born on October 19, 1974, and her mother died shortly thereafter on December 20, 1974. After his wife's death, Menconi Jr. asked his parents, petitioners herein, to care for the child. From the time of her mother's death until April 11, 1981, Angela lived for the most part in the care and custody of her grandparents. There were several instances in the past when the child was returned to the father at his request, but he kept Angela for only short intervals—at the most, several weeks. He would then return the child to the petitioners, stating he was unable to properly care for her.

On April 11, 1981, the father forcibly removed Angela from the home of her grandparents and refused to return the child when requested to do so. Four days after the abduction of the child, the grandparents filed a petition for custody pursuant to section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA). (Ill. Rev. Stat. 1981, ch. 40, par. 601(b)(2).) On March 18, 1982, the father filed a motion to strike and dismiss the grandparents' third amended petition, arguing the petition failed to state a cause of action. Respondent contended that since he had actual physical possession of Angela when the petitioners initiated the custody litigation, the grandparents lacked standing under section 601(b)(2). The trial court rejected the father's jurisdictional challenge and denied his motion to strike and dismiss. On January 3, 1983, following a hearing on the merits, the trial court awarded permanent custody to the petitioners.

The only issue raised on appeal is whether the grandparents had standing to file the petition under section 601(b)(2) of the IMDMA and the trial court jurisdiction to award custody of Angela to the petitioners where the child was in the actual physical possession of the father

when the custody proceedings were initiated.

Section 601(b) delineates the standing requirements in a child custody action for both parents and non-parents and provides in relevant part:

"(b) A child custody proceeding is commenced in the court:

(1) by a parent, by filing a petition:

(i) for dissolution of marriage or legal separation or declaration of invalidity of marriage; or

(ii) for custody of the child, in the county in which he is permanently resident or found; or

(2) by a person other than parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, *but only if he is not in the physical custody of one of his parents.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 40, par. 601(b).)

Once the standing and jurisdictional requirements set forth in the IM-DMA and the Uniform Child Custody Jurisdiction Act (UCCJA) (Ill. Rev. Stat. 1981, ch. 40, par. 2101 *et seq.*) are met, the court is directed to "determine custody in accordance with the best interest of the child" (Ill. Rev. Stat. 1981, ch. 40, par. 602).

A nonparent third party that fails to meet the section 601(b)(2) standing requirements is forced to proceed under the stricter standards of the Adoption Act (Ill. Rev. Stat. 1981, ch. 40, par. 1501 *et seq.*) or the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 701—1 *et seq.*). Before a third party can adopt the child of a nonconsenting parent pursuant to the Adoption Act, he or she is required to prove by clear and convincing evidence that the parent is "unfit." (See Ill. Rev. Stat. 1981, ch. 40, pars. 1501(D), 1510; *In re Adoption of Markham* (1981), 91 Ill. App. 3d 1122, 414 N.E.2d 1351.) Only after this showing has been made will the court apply the best-interests-of-the-child standard to determine whether custody should be awarded to the third party. (*In re Abdullah* (1981), 85 Ill. 2d 300, 423 N.E.2d 915.) The Juvenile Court Act requires a showing that a minor child is delinquent, in need of supervision, neglected, or dependent (see Ill. Rev. Stat. 1981, ch. 37, par. 702—1) and then a child should be removed from the custody of his parents "only when his welfare or safety or protection of the public cannot be adequately safeguarded without removal." Ill. Rev. Stat. 1981, ch. 37, par. 701—2(1).

The strict requirements imposed by the Adoption Act and the Juvenile Court Act have been construed as embodying a policy which favors the presumed superior right of natural parents over the competing claims of third persons seeking custody. (*In re Custody of*

*Townsend* (1981), 86 Ill. 2d 502, 508-09, 427 N.E.2d 1231.) Similarly, the limitation on nonparent standing contained in section 601 has been construed as evincing a policy favoring parental custody rights by permitting third-party standing and the consequent application of the less stringent best interests standard only in those cases where the parent does not have physical custody. *In re Custody of Barokas* (1982), 109 Ill. App. 3d 536, 543, 440 N.E.2d 1036.

Respondent argues that the superior right of a parent to the custody of his children requires us to strictly construe section 601(b) in favor of the parent and against third-party standing. He contends that since he had physical possession of his child, petitioners should be precluded from proceeding under the IMDMA and should rather have to satisfy the more stringent requirements of the Adoption Act or the Juvenile Court Act. Petitioners argue that "physical custody" as that term is used in section 601(b)(2), means more than mere physical possession of the child and further contend the father cannot deprive the grandparents of physical custody of Angela, nor gain physical custody himself, so as to deprive the grandparents of standing under 601(b)(2), by taking the child by force from the grandparents' home. Both petitioners and respondent cite *In re Custody of Barokas* (1982), 109 Ill. App. 3d 536, 440 N.E.2d 1036, in support of their respective positions.

In *Barokas*, the mother had temporarily placed her child in the care of her sister. A third party removed the child from the home of the sister and filed a custody petition under the IMDMA. There, we construed physical custody as the term is used in section 601(b)(2) to mean more than physical possession of the child, and stated:

"We are not convinced under the circumstances of this case that the manner in which petitioners acquired the child satisfied the standing requirement of section 601(b)(2). Overnight contact with third parties fails to fulfill the statutory provision that the child not be in the physical custody of one of her parents. A parent's 'actual possession and control of a child' (Ill. Rev. Stat. 1979, ch. 40, par. 2103.08) is not lost every time the child visits or spends a vacation with a relative or friend. We do not accept petitioners' theory that physical custody may be relinquished by default if a parent performs the task of parenting in a less than adequate manner. Petitioners cannot deprive respondent of physical custody of her child so as to acquire standing under section 601(b)(2) by taking the child from the home of her adult sister where respondent had placed her." 109 Ill. App. 3d 536, 544.

As respondent correctly points out, our decision in *Barokas* was predicated on a parent's superior right to the care, custody, and control of his child and the corresponding necessity for strict compliance with the statutory provisions of the IMDMA for third party standing in custody disputes. (109 Ill. App. 3d 536, 545.) While we recognize that a natural parent has a superior right to the custody of his child, that right is not absolute (see *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 209, 247 N.E.2d 417) and does not require a rigid and unthinking construction of section 601(b)(2).

The statutory scheme in Illinois as enacted in the IMDMA and the UCCJA evinces twin policies favoring the superior rights of natural parents to the custody of their children and of fostering greater stability in the home environment by deterring abductions and other unilateral removals of children. (Ill. Rev. Stat. 1981, ch. 40, pars. 601, 2102(a)(4), 2102(a)(5).) In *Barokas*, both of these policies were served by favoring the parent, since a third party had unilaterally removed the child from the custody of the parent and thereby sought to obtain standing under section 601(b)(2). In the present case, these policies are brought into direct conflict. Angela was raised from infancy by petitioners and the father's forcible removal of the child disrupted the *de facto* family relationship which existed between the child and her grandparents. We note that had the father sought legal redress of this custody dispute by way of *habeas corpus* relief or by proceeding under the custody provisions of the IMDMA, the court would have applied the best interests standard in resolving the dispute. (Ill. Rev. Stat. 1981, ch. 40, par. 602; *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 509-11; *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 209.) We will not now confer an advantage on the father by requiring the grandparents to proceed under the more rigorous standards set forth in the Adoption Act or the Juvenile Court Act.

Under the circumstances of this case, it is clear that the father had voluntarily relinquished physical custody of Angela in favor of the petitioners. The child lived in the virtually uninterrupted care and custody of her grandparents for 6½ years. The report of the court appointed psychologist indicates that Angela was firmly integrated into the grandparents' household which she considered to be her home and the relationship between the child and the grandmother was one of mother to daughter. In contrast, the father's contact with his daughter can only be described as sporadic. We find the voluntary nature of the initial transfer of the child, coupled with the lengthy period of care by the grandparents and the corresponding integration of the child into the home of her grandparents, sufficient to divest the father

of physical custody of the child. Accordingly, petitioners clearly would have had standing under section 601(b)(2) prior to the time of the abduction of the child by the father. On these facts, we find the lapse of four days between the time of the abduction and the filing of the custody petition insufficient to reinvest the father with physical custody so as to deprive petitioners of standing.

For the foregoing reasons, we find petitioners had standing to bring this custody action pursuant to section 601(b)(2) of the IMDMA and we therefore affirm the judgment of the circuit court.

Affirmed.

McGLOON and CAMPBELL, JJ., concur.