182 Ill. App.3d 345 (1989)
538 N.E.2d 785
In re CUSTODY OF CATRINA MARIE BOZARTH (Cheryel McKerr, Petitioner-Appellant,
v.
Elmer Bozarth, Respondent-Appellee).
No. 2-88-0776.
Illinois Appellate Court  Second District.
Opinion filed May 4, 1989.
*346 Robert W. Brown, of Dunlap & Brown, Ltd., of Libertyville, for appellant.
Charles E. Rapin, of Law Offices of Howard M. Lang, of Libertyville, for appellee.
Reversed and remanded.
PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:
The petitioner, Cheryel McKerr, appeals from the judgment of the trial court which dismissed her petition seeking custody of her granddaughter, Catrina Marie Bozarth, pursuant to the Uniform Child Custody Jurisdiction Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 2102 et seq.). The petitioner asserts that the trial court erred in determining that the superior court of the State of Washington properly exercised jurisdiction in accordance with the Act. The petitioner further urges that the trial court erroneously deferred to the judgment of the Washington court and found that it was compelled to abide by such judgment pursuant to sections 7 and 14 of the Act (Ill. Rev. Stat. 1987, ch. 40, pars. 2107, 2114). We agree with the petitioner's contentions and reverse the judgment of the trial court and remand the cause.
The following review of the record is pertinent to our consideration of the petitioner's appeal. The respondent, Elmer Bozarth, is a resident of the State of Washington and is the father of the minor child, Catrina Marie Bozarth. Catrina was born to the respondent and Wendy Kay Overman on February 6, 1984, in Tacoma, Washington. Overman, who was 16 at the time of Catrina's birth, and the respondent never married. Approximately five months after Catrina's birth, Overman abandoned the child and the respondent, and her whereabouts were and are unknown. The respondent voluntarily relinquished *347 custody of Catrina to his mother, petitioner Cheryel McKerr, on October 4, 1984, when the child was approximately eight months old. The petitioner, an Illinois resident, returned to the State of Illinois with the child, where they have continuously resided through the date of the instant appeal. Thus, Catrina, now five years old, has resided with her paternal grandmother in the State of Illinois since infancy.
On October 6, 1987, respondent filed an amended petition to determine paternity accompanied by an affidavit and a motion for order to show cause in the superior court of Washington for Pierce County in the State of Washington. The affidavit, signed by the respondent's Washington counsel, stated:
"That Petitioner's [Elmer Bozarth's] mother, CHERYL [sic] McKERR, currently has custody of the minor child, CATRINA MARIE BOZARTH. That she has had custody for approximately three years. That she took the child from the Petitioner and proceeded to take the child out of the state. * * * That I believe that Petitioner's [respondent's] mother, CHERYL [sic] McKERR should be ordered to bring the child back into this state and turn the custody over to Petitioner [respondent] pending the outcome of this action."
The Washington court issued an order to show cause on October 6, 1987, ordering the petitioner to appear in court in Tacoma, Washington, on December 4, 1987, to show why temporary custody of Catrina should not be granted to the respondent.
On November 13, 1987, the petitioner filed a petition for custody pursuant to the Act, alleging that she was a "contestant" within the meaning of the Act and asserting that the circuit court for the Nineteenth Judicial Circuit, Lake County, had jurisdiction over her petition pursuant to section 4 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 2104). The petitioner further alleged that Catrina had resided in the State of Illinois in excess of six months, that there was available in the State of Illinois substantial evidence concerning her present and future care, protection, custody, training, and personal relationships, and that the child had a significant connection with the State of Illinois. The petitioner further disclosed to the court the pendency of Bozarth's paternity action in the superior court of the State of Washington.
The petitioner appended to her petition a sheriff's return of service in which Ronald Rauch, a deputy sheriff in Pierce County, Washington, certified that he had effected personal service on the respondent on November 30, 1987.
*348 On December 4, 1987, the Pierce County superior court issued a paternity decree declaring Elmer Bozarth the natural father of Catrina. In its findings of fact and conclusions of law, the Pierce County superior court declared that jurisdiction was obtained over Catrina "by service of Summons and Petition on the Respondent [Catrina Marie Bozarth] by certified mail." The court found Bozarth and Wendy Kay Overman to be "fit and proper persons to have the care, custody and control of the minor child," and, from these findings, the court concluded that Bozarth and Overman should be awarded joint custody of the child, with physical custody being awarded to Bozarth.
There is no indication in the Washington court's findings and conclusions, nor anywhere else in the record before us, that the respondent in this action, Elmer Bozarth, informed the Washington court that there was a custody proceeding pending in the State of Illinois at the time it issued its decree. It is also apparent that although the Washington court appointed a guardian ad litem for Catrina on August 21, 1987, the guardian's report was not submitted to the court until December 23, 1987, some 19 days after it had issued its paternity decree and custody award.
The guardian's report reveals that it was based upon two interviews, one with Elmer Bozarth, and the other with Toni Pollock, who the guardian indicates is Bozarth's wife. (We note that a pleading Bozarth submitted to this court states "he was getting married.") Both of these interviews took place on October 5, 1987. The guardian's report includes in its findings that McKerr, the paternal grandmother of Catrina, had had temporary custody of the child for nearly three years, outside the State of Washington; that Wendy Kay Overman, Catrina's natural mother, was 16 years old at the time Catrina was born; that she never married Catrina's father; and that "[s]hortly after Catrina's birth, [she] went to work for the Job Corps somewhere in Oregon and has had next to no interaction with Catrina * * * [and her] whereabouts are unknown." The guardian further reported that she was unable to interview McKerr "and has only hearsay information on which to base any opinion as to her appropriateness as a custodian of Catrina." The guardian's report concluded that, "In the best interest of this child, this Guardian ad litem [recommends that] custody be awarded to Elmer Bozarth, natural father and petitioner herein."
On December 18, 1987, the respondent filed his response to McKerr's petition in the Illinois circuit court. In his response, he admitted that the child was currently located in the State of Illinois and that he had voluntarily relinquished custody of Catrina to his mother on October *349 4, 1984. He asserted that until December 4, 1987, the date of the Pierce County superior court paternity decree, "I had [no] rights with regards to Catrina as there was nothing showing me to be the father." (We note that in a later pleading filed in the Illinois circuit court, Bozarth attached a photocopy of a "Certificate of Live Birth" for Catrina received by the registrar of the State of Washington Department of Social and Health Services, on February 28, 1984, naming him as the father of the child.) Finally, the respondent asserted that the Illinois court should give full faith and credit to the decree of the Washington court which awarded him physical custody of the child.
On February 2, 1988, the respondent filed a motion to contest the jurisdiction of the Illinois court, claiming that section 7 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 2107) prohibited the court from exercising its jurisdiction. The respondent further asserted that the Illinois court was required to recognize the Washington court's order of December 4, 1987, pursuant to section 14 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 2114). The circuit court for the Nineteenth Judicial Circuit, Lake County, permitted the respondent to file his motion contesting jurisdiction on February 2, 1988, and allowed the petitioner to file a response, which she did on March 8, 1988.
The respondent filed a reply March 30, 1988, in which he alleged that Catrina had lived in the State of Washington the first year of her life and that her mother had always resided in the State of Washington. He further alleged that he and Overman never relinquished their rights as parents and that McKerr had no legal rights to the child nor standing to bring any action. He claimed that "the Court of the State of Washington has already litigated the issue of custody of the minor child having obtained personal jurisdiction over CHERYEL McKERR and other parties through service of process." He further claimed that through the Washington Parentage Act (Wash. Rev. Code Ann. § 26.26.010 et seq. (1986)), the State acquired the jurisdiction over the parties over the issue of custody of the minor child.
In a letter dated May 2, 1988, the trial court informed the parties that it was granting the respondent's motion contesting jurisdiction as it found that the Washington court's custody order was entered pursuant to the Act. The trial court thus concluded that section 14 of the Act compelled it to recognize the Washington decree. The court further noted that the petitioner had notice of the Washington proceedings and failed to object to that court's exercise of jurisdiction.
The petitioner filed a timely motion to reconsider, contending that the Illinois court had the right and obligation to assume jurisdiction *350 over her petition for custody of Catrina. The trial court denied the motion. It found that although both States could assert jurisdiction, it was "too late, however, for Ms. McKerr to argue that Illinois is the more appropriate forum in light of the fact that Washington has already made a custody determination." The petitioner's timely appeal ensued.
The record before us clearly establishes the interstate nature of the custody actions concerning Catrina Marie Bozarth as filed by the parties in the courts of the States of Illinois and Washington. Thus, the matter must be resolved by either court according to the provisions of Uniform Child Custody Jurisdiction Act, which has been enacted in both States (Ill. Rev. Stat. 1987, ch. 40, par. 2101 et seq; Wash. Rev. Code Ann. § 26.27.010 et seq. (1986)). A review of both States' enactments reveals each has adopted the Act as drafted by the National Conference of Commissioners on Uniform State Laws with essentially no substantive changes. See generally 9 U.L.A. 123 et seq. (1988).
 1 Among the stated purposes of the Act are the promotion of cooperation with courts of other States so that custody judgments may be rendered in the State which may best decide the case in the interest of the child and the assurance that litigation concerning the custody of the child will take place ordinarily in the State where the child and his family have the closest connection (Ill. Rev. Stat. 1987, ch. 40, pars. 2102(2), (3); see also Wash. Rev. Code Ann. §§ 26.27.010(1)(b), (1)(c)). The Act further encourages Illinois courts to decline jurisdiction in matters where a child and his family have a closer connection with another State and to exchange information and other mutual assistance with the courts of other States concerning matters about the same child (Ill. Rev. Stat. 1987, ch. 40, pars. 2107, 2108; see also Wash. Rev. Code Ann. §§ 26.27.060, 26.27.070).
The Act provides the following definitions which are relevant to the dispute before us:
"§ 3.01. `Contestant' means a person, including a parent, who claims a right to custody or visitation rights with respect to a child." Ill. Rev. Stat. 1987, ch. 40, par. 2103.01.
"§ 3.04. `Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months * * *." Ill. Rev. Stat. 1987, ch. 40, par. 2103.4.
"§ 3.08. `Physical custody' means actual possession and control of a child." Ill. Rev. Stat. 1987, ch. 40, par. 2103.08.
"§ 3.09 `Person acting as parent' means a person, other than *351 a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody." Ill. Rev. Stat. 1987, ch. 40, par. 2103.09.
See also Wash. Rev. Code Ann. §§ 26.27.020 (1), (5), (8), (9) (1986).
The Act sets forth the following jurisdictional requirements:
"§ 4. Jurisdiction. (a) The circuit courts have jurisdiction to make a child custody determination by initial or modification judgment if:
1. this State
(i) is the home state of the child at the time of commencement of the proceeding, or
(ii) had been the child's home state within 6 months before commencement of the proceeding * * *; or
2. it is in the best interest of the child that a court of this State assume jurisdiction because
(i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and
(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
* * *
4. (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1., 2., or 3., or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and
(ii) it is in the best interest of the child that this court assume jurisdiction." (Ill. Rev. Stat. 1987, ch. 40, par. 2104.)
(See also Wash. Rev. Code Ann. § 26.27.030 (1986).) This section of the Act provides that while the physical presence of the child in the State is desirable, it is not a prerequisite for jurisdiction; additionally, such presence is not sufficient without more to confer jurisdiction. Ill. Rev. Stat. 1987, ch. 40, par. 2104(c), (d); see also Wash. Rev. Code Ann. §§ 26.27.030(2), (3) (1986).
Section 7 of the Act proscribes the courts of this State from exercising jurisdiction if, at the time a petition is filed under the Act, a custody proceeding concerning the same child is pending in a court of another State exercising jurisdiction substantially in conformity with the Act. (Ill. Rev. Stat. 1987, ch. 40, par. 2107(a); see also Wash. Rev. Code Ann. § 26.27.060(1) (1986).) This section directs a court of the State of Illinois to communicate with the courts of other States when it believes that proceedings are pending elsewhere "to the end that *352 the issue may be litigated in the more appropriate forum." Ill. Rev. Stat. 1987, ch. 40, par. 2107(c); see also Wash. Rev. Code Ann. § 26.27.060(3) (1986).
In the event that more than one State satisfies the jurisdictional requirements of the Act, section 8 provides authority whereby Illinois courts may decline jurisdiction on the ground of forum non conveniens. (Ill. Rev. Stat. 1987, ch. 40, par. 2108; see also Wash. Rev. Code Ann. § 26.27.070 (1986).) This section sets forth the factors the court should consider in determining whether it is an inconvenient forum and authorizes the court to communicate with the courts of other States and to exchange pertinent information regarding the assumption of jurisdiction by either court "with a view to assuring jurisdiction will be exercised by the most appropriate court." Ill. Rev. Stat. 1987, ch. 40, par. 2108(d); see also Wash. Rev. Code Ann. § 26.27.070(4) (1986).
Lastly, section 14 of the Act requires Illinois courts to recognize and enforce initial or modification custody judgments of courts of other States under certain conditions, namely, when a court of another State has "assumed jurisdiction under statutory provisions substantially in accordance with this Act or [made its judgment] under factual circumstances meeting the jurisdictional standards of the Act." Ill. Rev. Stat. 1987, ch. 40, par. 2114; see also Wash. Rev. Code Ann. § 26.27.130 (1986).
 2 The authority for the filing of a child custody petition is found in section 601 of the Illinois Marriage and Dissolution of Marriage Act, which provides that a nonparent may file such a petition only if the subject child is not in the physical custody of one of her parents. (Ill. Rev. Stat. 1987, ch. 40, par. 601(b)(2).) Thus the initial consideration faced by the trial court in the instant matter is whether the petitioner had standing to file her custody petition regarding Catrina. Given that Catrina's natural father voluntarily surrendered her care and custody to the petitioner while the child was still an infant, and the petitioner's care and custody continued uninterrupted for approximately three years, we conclude that Catrina was not in the physical custody of her natural father. Additionally, the record clearly establishes that Catrina's natural mother abandoned the child while she was an infant. Thus we determine that the petitioner, Cheryel McKerr, Catrina's paternal grandmother, has standing to initiate custody proceedings. See Montgomery v. Roudez (1987), 156 Ill. App.3d 262; see also In re Custody of Menconi (1983), 117 Ill. App.3d 394.
 3 We next consider whether the courts of Illinois have jurisdiction pursuant to the Act. The facts alleged by both parties establish that the child has resided with the petitioner in this State since approximately *353 October 4, 1984. Having previously concluded that the child is not in the physical custody of either of her parents, we believe it logical to find that the child is in the physical custody of the petitioner, who is clearly a "person acting as parent" within the meaning of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 2103.09). Thus, we determine that Illinois is Catrina's "home state" as she has resided in this State for at least six months immediately preceding the initiation of McKerr's petition, with the petitioner, who is a "person acting as parent," thus satisfying the requirements of section 3.04 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 2103.04).
 4 The determination that Illinois is Catrina's home State dictates that the courts of Illinois have jurisdiction to make a child custody determination concerning her pursuant to section 4 (a)(1)(i) of the Act. (Ill. Rev. Stat. 1987, ch. 40, par. 2104 (a)(1)(i).) Even though it is manifest that the State of Illinois is Catrina's home State (see In re Marriage of Miche (1985), 131 Ill. App.3d 1029), the courts of Illinois would likewise be eligible to assume jurisdiction pursuant to the "best interest" test set forth in section 4(a)(2) of the Act, which requires a two-part showing that (1) the child and a parent or contestant have a significant connection with the State; and (2) substantial evidence concerning the child's present or future care, protection, training and personal relationships is readily available in the State (Ill. Rev. Stat. 1987, ch. 40, pars. 2104(a)(2)(i), (a)(2)(ii)). Catrina has resided in Illinois over three years with her paternal grandmother, a contestant in the instant action; these two individuals undeniably have a significant connection with the State (see Jennings v. Jennings (1985), 133 Ill. App.3d 753, 756). We think it clear that, under these circumstances, there is available in this State substantial evidence concerning Catrina's present and future care, etc. (See Hollo v. Hollo (1985), 131 Ill. App.3d 119, 125; see also In re Marriage of Levy (1982), 105 Ill. App.3d 355, 362.) Thus, with regard to Catrina, the courts of Illinois have jurisdiction to make a child custody determination pursuant to both major bases set forth in section 4 of the Act. Ill. Rev. Stat. 1987, ch. 40, pars. 2104(a)(1), (a)(2)). See generally 9 U.L.A. Comment, at 144-45 (1988).
 5 Although the Illinois court's jurisdiction regarding Catrina's custody determination is unquestioned, such jurisdiction may not be exercised if, at the time the petitioner filed her petition, a similar custody proceeding was pending in another State, as provided in section 7 of the Act. (Ill. Rev. Stat. 1987, ch. 40, par. 2107.) The trial court in the instant matter made such a determination and found that it was prohibited from exercising jurisdiction as a similar proceeding was already *354 pending in the superior court of the State of Washington in Pierce County. We believe that the trial court's finding that the Washington court was operating under the provisions of the Act when it entered its paternity decree and custody award on December 4, 1987, was in error. There is no indication in the Washington pleadings contained in the record on appeal that the Washington court ever considered the jurisdictional requirements set forth in section 4 of the Act (see Wash. Rev. Code Ann. § 26.27.030 (1986)). It is further made apparent by these pleadings that the Pierce County court was fully informed that the child in question was not a Washington resident and had not been for some time. Plainly Washington was and is not Catrina's "home state." (Wash. Rev. Code Ann. § 26.27.030 (1)(a) (1986).) The Washington court was made aware of the interstate nature of the case as of October 6, 1987; yet in its findings dated December 4, 1987, it declared that it had obtained jurisdiction over Cheryel McKerr, the petitioner in the instant matter, "by service of Summons and Petition * * * by certified mail." Such a finding of jurisdiction is not authorized by the Act. See generally Wash. Rev. Code Ann. § 26.27.030 (1986); see also Ill. Rev. Stat. 1987, ch. 40, par. 2104.
The Washington appellate court has considered child custody matters which are initiated in other than the child's home State and has relied upon the principles for determining jurisdiction as set forth in the "best interest" test contained in section 26.27.030(1)(b) of the Washington Revised Code Annotated (compare Ill. Rev. Stat. 1987, ch. 40, pars. 2104(a)(2)(i), (a)(2)(ii)) in In re Marriage of Steadman (1983), 36 Wash. App. 77, 671 P.2d 808, and Hudson v. Hudson (1983), 35 Wash. App. 822, 670 P.2d 287. In Steadman, the Washington court concluded that it, rather than the Maine court, had jurisdiction to decide a custody dispute over an infant where neither State was the child's "home state." It held that the presence of the mother's family members in Washington established a "significant connection" for her and upheld the trial court's finding that the infant had a significant connection with the State, and it determined that substantial evidence existed within the State concerning his best interests. The court concluded:
"Thus, the requirements of RCW 26.27.030(1)(b) have been met: both [mother and child] have a `significant connection' with Washington, and the evidence necessary to determine the elements of custody is available to the court. Jurisdiction was properly accepted." 36 Wash. App. at 80, 671 P.2d at 810.
In Hudson, decided the same year as Steadman, the Washington appellate court interpreted the "best interest" test as found in section *355 3 of the Uniform Child Custody Jurisdiction Act as enacted in Indiana and stated, "Under this test, the state with jurisdiction is the one which has maximum access to relevant evidence regarding the child's `present or future care, protection, training, and personal relationships.'" (Emphasis added.) 35 Wash. App. at 830, 670 P.2d at 292.) The Hudson court recognized that the most significant evidence concerning these facts "will have to come from the parents themselves, [or] from other persons who might be entrusted with the care of the child." (Hudson, 35 Wash. App. at 830, 670 P.2d at 292, quoting the commentator, Bridgitte M. Bodenheimer, in The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws, 22 Vand. L. Rev. 1207 (1969).) The Hudson court concluded that as the facts established the child had a significant connection with the State of Indiana, the court was mandated to recognize the Indiana custody award.
As in Steadman and Hudson, Washington was clearly not the "home state" at the time Elmer Bozarth initiated his paternity action and sought custody of Catrina. Therefore, the superior court in Pierce County was required to apply the "best interest" principles set forth in section 26.27.030(1)(b) of the Washington Revised Code Annotated in order to determine whether it could properly assume jurisdiction. It is apparent on the face of the pleadings from the Washington court that no such findings of significant connections and availability of substantial evidence were ever made.
More recently, the Washington appellate court has again applied the "best interest" test as well as the "home state" test provided in section 3 of the Uniform Act (see also Wash. Rev. Code Ann. §§ 26.27.030(1)(a), (b) (1986)) in In re Custody of Thorensen (1987), 46 Wash. App. 493, 730 P.2d 1380. There the Washington court held that it had jurisdiction flowing from both criteria to modify a Florida decree, and it was not precluded from assuming such jurisdiction by the already pending action in Florida because the Florida action was not in compliance with the Uniform Act's jurisdictional requirements. The court stated:
"[W]e find that the exercise of jurisdiction by the Washington court serves one of the major purposes of the UCCJA of assuring that litigation take place in the state with the closest connection with the child and where the most significant evidence concerning the child's care, protection, training, and personal relationships is available. RCW 26.27.010(1)(c). * * * [T]he best interest of the child is served if the forum for the litigation is the state having the best access to relevant evidence." Thorenson, *356 46 Wash. App. at 507, 730 P.2d at 1388.
The Thorenson court recognized, as had the Hudson court, that the Act requires maximum rather than minimum contact in order to satisfy the mandate of "significant connections." (Thorenson, 46 Wash. App. at 507, 730 P.2d at 1388; Hudson, 35 Wash. App. 830, 670 P.2d at 292.) This requirement has been similarly interpreted and applied by the courts in Illinois, where it has been further stated that the "substantial evidence" requirement is not intended to be used as a substitute for "some evidence" but clearly requires a high degree of connection and access to evidence. See In re Marriage of Miche (1985), 131 Ill. App.3d at 1032; In re Marriage of Levy (1982), 105 Ill. App.3d at 361-62.
We think it clear on the face of the record before us that no facts supporting a finding of significant connections exist between Catrina, the petitioner, and the State of Washington. Likewise, the facts fail to support a finding that substantial evidence concerning Catrina's present or future care, protection, training, and personal relationships is readily available in the State of Washington. Thus we conclude the superior court of the State of Washington in Pierce County did not properly assume jurisdiction, and when it issued its decree of paternity and custody award December 4, 1987, it failed to exercise jurisdiction substantially in conformity with the Act.
In view of our conclusions above, we hold that the trial court was not compelled to recognize and enforce the custody order of the Washington court pursuant to section 14 of the Act, as it is plain that that court had not properly assumed jurisdiction under the Act, nor was its order made under factual circumstances meeting the jurisdictional standards of the Act. But see In re Marriage of Dagher (1986), 145 Ill. App.3d 379.
 6 At the risk of belaboring the jurisdictional requirements set forth in the Act, we note that the trial court erroneously concluded that the Washington court had jurisdiction regarding the instant custody dispute because the petitioner herein received notice and failed to object to that court exercising jurisdiction. In its later order denying the petitioner's motion to reconsider, the trial court found that Washington had a basis for asserting jurisdiction concurrent with the State of Illinois, but concluded that it was too late for the petitioner to argue that Illinois was the more appropriate forum as the Washington court had already made a custody determination. These findings of the trial court are patently in violation of the jurisdictional requirements set forth in section 4 of the Act as it is enacted in both the States of Illinois and Washington. (See Ill. Rev. Stat. 1987, ch. 40, *357 par. 2104; Wash. Rev. Code Ann. § 26.27.030 (1986)). A contestant's failure to act does not vest an inappropriate court with jurisdiction, nor does the fact that one court has succeeded in issuing a custody order sooner than another court endow it with jurisdiction if it does not meet the requirements of the Act. In short, McKerr's failure to object to the paternity action in Washington and that court's haste in issuing an unsupported custody order do not satisfy either the "home state" or "best interest" criteria essential for the establishment of jurisdiction under the Act.
The judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings.
Reversed and remanded.
DUNN and McLAREN, JJ., concur.