Adam Gonzalez, the father of 11-year-old Erika Lyn Gonzalez, appeals from an order of the circuit court of Will County awarding permanent custody of Erika to her maternal grandparents, Richard and Judy Donnelly, with whom she resides.
The facts giving rise to this litigation are not disputed. On May 10, 1979, Adam Gonzalez, then age 22, and Nicollette Donnelly, then age 17, were married, two days before the birth of their daughter, Erika. Adam and Nicollette separated in May of 1983, and in August of that year Adam left Joliet and moved to California. At that time Nicollette and Erika moved into the Donnelly family home and lived there for three years. Adam and Nicollette were divorced in July of *Page 30 
1983 with Nicollette receiving custody of Erika subject to Adam's right of visitation.
In 1984 Adam enlisted in the United States Air Force, and after boot camp training, was stationed in Germany. In November of 1986, about five months after moving out of the Donnelly home and into an apartment with Erika, Nicollette died suddenly.
The grandparents filed a petition for temporary and permanent custody of Erika shortly after Nicollette's death. Thereafter, Adam, who had returned to Joliet on leave, filed a petition for a writ of habeas corpus seeking custody and also filed a special appearance challenging the Donnellys' standing to seek custody under section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)). The trial court consolidated the two causes, and after hearing arguments of counsel, dismissed the special appearance, appointed a guardian ad litem for Erika, and ordered that Erika remain in the temporary custody of the Donnellys until the hearing on the petitions.
A hearing on all pending petitions was scheduled for December 15, 1986. On that date, an agreed order was entered which provided that temporary custody be awarded to the Donnellys without prejudice to the right of any party and subject to liberal visitation by Adam. The order also provided that all parties would work toward restoring Erika to the custody of her father, using Dr. Dojna Barr for counselling, and "that the physical transfer of possession and the custody of ERIKA LYN GONZALEZ take place as soon as possible consistant [sic] with the best interests of the minor child herein."
Adam then returned to Germany until he obtained a transfer to the United States. In March of 1987, he was stationed at Chanute Air Base in Rantoul, Illinois, and thereafter exercised his right to visitation with Erika on a weekly basis. He obtained an early honorable discharge in December of 1987 and returned to Joliet, where he resided with his mother.
In February of 1988 the Donnellys filed a petition for permanent custody, and Adam responded with his own petition for permanent custody. After a protracted hearing, the trial court awarded permanent custody of Erika to Richard and Judy Donnelly with Adam to have visitation and to pay child support.
Adam has appealed from that order on three grounds: (1) that the grandparents lack standing; (2) that the award of custody to the grandparents was contrary to the manifest weight of the evidence; and (3) that evidence of drug use by Adam was erroneously admitted. We affirm the order of the trial court. *Page 31 
The threshold question in this appeal is whether the Donnellys have the requisite standing to file a petition for custody of Erika under section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)), which provides that a person other than a parent may petition for custody of a child only if the child is not in the physical custody of one of her parents.
• 1 Illinois courts have found "standing" in custody cases when a parent does not have custody of the child, thereby allowing a nonparent to petition for custody. Once standing is established, the court will apply the "best interest of the child" standard to determine custody. In re Custody ofPeterson (1986), 112 Ill.2d 48, 491 N.E.2d 1150; In reCustody of McCuan (1988), 176 Ill. App.3d 421, 531 N.E.2d 102.
• 2, 3 Adam contends that custody of Erika was vested in him upon the death of Nicollette and was not vested in the Donnellys even though they have had physical possession of the child since that time. The Illinois Supreme Court has held that the term "physical custody" as used in the statute means something more than mere physical possession of the child at the time custody litigation is initiated. (In re Custody ofPeterson, 112 Ill.2d 48, 491 N.E.2d 1150.) Physical custody has been held to depend upon various factors, including who was in physical possession of the child, how that person obtained possession, the duration of possession, and the nature of the physical possession. (In re Marriage of Carey (1989), 188 Ill. App.3d 1040.) In some cases it has been determined that a surviving natural parent acquired physical custody of the child upon the death of the other parent even though the surviving parent did not immediately obtain actual physical possession of the child. (In re Custody of Peterson, 112 Ill.2d 48,491 N.E.2d 1150; In re Custody of O'Rourke (1987), 160 Ill. App.3d 584,514 N.E.2d 6.) However, where the surviving parent voluntarily places the child with the grandparents or other nonparents, particularly where the parent is unable to provide the care the child requires, it has been held that the standing was derived from the parent's voluntary relinquishment of physical possession of the child for an extended period of time. (In re Marriage of Carey, 188 Ill. App.3d 1040; In reCustody of McCarthy (1987), 157 Ill. App.3d 377,510 N.E.2d 555; In re Custody of Menconi (1983), 117 Ill. App.3d 394,453 N.E.2d 835.
• 4 In the case at bar, Adam agreed to continue temporary custody of Erika with the Donnellys during the pendency of their petition for permanent custody. At that time he was stationed in Germany, and as he later stated, he had no way to care for Erika there. *Page 32 
In agreeing to relinquish possession of Erika to her grandparents, Adam waived any objection to the Donnellys' standing to petition for custody. (Cf. In re Custody ofMcCarthy, 157 Ill. App.3d 377, 510 N.E.2d 555.) Furthermore, the agreed order also provided that custody would be changed to Adam when it was determined to be in the best interest of Erika to do so. This provision invokes the "best interest of the child" standard and is a further indication that the grandparents' standing was being acknowledged by Adam. Otherwise, the grandparents would have to establish the father's unfitness before proceeding to the issue of the best interest of the child. In re Custody of Peterson, 112 Ill.2d 48,491 N.E.2d 1150.
We conclude that the trial court correctly determined that Adam had waived any right to object to the standing of the Donnellys to petition for custody and further that he expressly agreed to have custody determined on the basis of the best interest of the child standard.
• 5 Adam next contends that the trial court's award of permanent custody to the grandparents was contrary to the manifest weight of the evidence. There is, of course, a legal presumption in favor of the natural parent; the burden is on the Donnellys to overcome that presumption and to establish that the best interest of the child favors custody with them. (In re Custody of Walters (1988), 174 Ill. App.3d 949,529 N.E.2d 308.) The issue is a factual one, and the evidence presented to the trial court here was extensive. In addition to testimony by the parties and an in camera interview of Erika, the court heard testimony from relatives of the Donnellys and of Adam and from two doctors who had counselled and made assessments of the parties.
The trial court, in announcing its decision, stated that this part of the case was not close. Both Dr. Barr, a child psychiatrist, and Dr. Stoner, a clinical psychologist, testified that the Donnellys have provided stable, positive, and supportive relationships for Erika and that it is in Erika's best interest to remain with them. Due to the loss of her mother when she was seven, Erika has a great fear of losing her grandmother and needs the security of her grandparents' home. Both doctors found Adam to be lacking in parenting skills and in stability. Adam has indicated that he wants custody regardless of the consequences to Erika and that he wants to have the authority to make decisions about her. Adam was described as self-centered and having trouble responding to the needs of his child.
Richard Donnelly has been employed at Caterpillar for 28 years and earns $41,000 annually. Judy Donnelly is a homemaker who is *Page 33 
not employed outside the home and is available to care for Erika when needed. Adam Gonzalez is self-employed as a carpenter's helper and earns $100 to $200 take-home pay each week. Adam's mother, sister, and sister-in-law testified that they would be able to help Adam care for Erika. Adam stated that he would continue to live with his mother in her home, where there was also room for Erika.
Erika does well in school, is a bright, articulate child, and is well adjusted. During the in camera interview, she told the judge that she preferred to live with her grandparents although she wanted to visit her father.
The trial court expressly found Adam not a credible witness, stating that, in 26 years, he had never been confronted with a person "that was such a blatant teller of untruths." The court enumerated instances when Adam testified to something which was contradicted by other evidence or which was simply not believable. The court also observed that Adam had no contact with Erika after he left Joliet in 1983 until he returned from Germany on leave in June of 1986. During those crucial years in Erika's life, from age four to seven, the Donnellys provided a home for Erika and her mother and assisted in raising the child. Furthermore, support payments for Erika were sent while Adam was in the Air Force, but his contributions before enlisting were minimal. Since his discharge, he has paid no support although subject to a court order to make payments. He testified that he has $1,000 or $2,000 in savings but that money is for him and Erika, not for the Donnellys. The trial court also noted that Adam had told Erika that he would take her to California if he had custody, thereby depriving her of any continued contact with the Donnellys.
• 6 Without recounting the evidence in detail, it is plain from a review of the record that the evidence strongly supported the decision of the trial court. Also, we cannot fault the trial court's determination of Adam's lack of credibility. As the court noted, the record is replete with instances where testimony by Adam was impeached by other witnesses, by prior inconsistent statements, by his own letters, and by the inherent improbability of his testimony. The trial court's award of custody to the Donnellys was not contrary to the manifest weight of the evidence.
The final error relied upon by Adam is that the trial court erroneously admitted evidence of his prior use of drugs. He argues that such evidence was irrelevant, speculative, and unreliable. The evidence concerned alleged drug use during the time Adam lived in *Page 34 
Joliet before moving to California in 1984. A woman who had been a close friend of Nicollette and was present on many occasions in 1983 and 1984 when Adam used drugs testified to the details of the drug use which she had observed. This was testimony of direct observation by an eyewitness, not speculation.
• 7 It is well established that a parent's use of drugs is relevant to the issue of custody only if the parent's conduct can be shown to affect his mental or physical health and his relationship with the child. In re Estate of Becton (1985),130 Ill. App.3d 763, 474 N.E.2d 1318.
Here the trial court stated that the evidence of Adam's drug use was not considered in determining the best interest of the child, but was considered only for purposes of impeachment. When Adam testified that he had moved to California in 1984 to look for work, the Donnellys sought to impeach his testimony by introducing a letter he had written to Nicollette at that time stating that he had left because he had been threatened with violence in connection with his drug dealing and, he said, "I didn't want you and Erika to be involved or around if it were to be carried out." In that letter, and an earlier one as well, he stated several times that he was no longer the drug dealer he had been.
• 8 The trial court did not abuse its discretion in admitting evidence of Adam's drug use for the purpose of impeachment of his testimony.
For the reasons stated, we affirm the order of the circuit court of Will County awarding permanent custody of Erika Gonzalez to her maternal grandparents, Richard and Judith Donnelly.
Affirmed.
HEIPLE, P.J., and STOUDER, J., concur. *Page 35