*In re* CUSTODY OF BRITTANY DENISE CANNON, a Minor, *et al.* (Mable Colbert, Petitioner-Appellee, v. Raquel Dora *et al.*, Respondents-Appellants).

First District (3rd Division)    No. 1—94—0747

Opinion filed December 14, 1994.

Fein & Seeskin, of Oak Park (Morris A. Seeskin and Eileen L. Fein, of counsel), for appellants.

Paul A. Karkula, of Edward R. Vrdolyak, Ltd., of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Respondent Raquel Dora appeals the trial court's order awarding permanent custody of her two minor children to their great-grandmother, petitioner Mable Colbert.

Respondent argues petitioner lacked standing under section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/601(b)(2) (West 1992)) (the Act), and the trial court: (1) improperly exercised plenary jurisdiction to base the custody award upon equitable principles; (2) denied the parties due process by prematurely ruling on the merits before addressing respondent's motion to strike the emergency custody petition; and (3) improperly failed to recuse itself after receiving an *ex parte* communication from a third party concerning the case.

Pursuant to this order, governed by Illinois Supreme Court Rule 23(a)(1) (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23(a)(1), eff. July 1, 1994), we affirm in part, reverse in part and remand.

Respondent is the natural mother of Startrice Nicole Anderson, who was born in August 1991, and Brittany Denise Cannon, who was born in February 1993. On June 19, 1993, the children began to reside with petitioner, their great-grandmother, at her residence in Chicago.

Upon application to the probate division of the circuit court of Cook County (see 755 ILCS 5/1—1 *et seq.* (West 1992)), the court granted petitioner permanent custody of both children beginning October 15, 1993, and until 10:30 a.m. on January 7, 1994.

On January 5, 1994, petitioner filed an "Emergency Petition for Custody" with the domestic relations division of the circuit court of Cook County (see 750 ILCS 5/601 (West 1992)). The next day both probate proceedings were dismissed for petitioner's lack of standing, and respondent filed a "Special and Limited Appearance" and a "Motion to Strike Emergency Petition For Custody Due to Lack of Subject Matter Jurisdiction" which alleged petitioner lacked standing pursuant to section 601(b)(2) of the Act. Also on this day the domestic relations court entered an order maintaining the status quo (*i.e.*, the children would reside with petitioner) until further orders of the court; granted respondent visitation rights with the children; and set a hearing on the motion to strike. Although the order does not reflect it, the court further appointed the public guardian of Cook County to represent the children and he entered an appearance on January 11, 1994.

The hearing on the petition and motion to strike began on January 11 and lasted for several days during which testimony was

presented by both parties, the children's grandmother, Laverne Julian, and a treating physician, the latter testifying about the alleged sexual abuse of Startrice, which the trial court subsequently found petitioner failed to prove.

On January 31, 1994, the court rendered a verbal decision on the motion to strike and then entered an order which amended visitation and provided that respondent's boyfriend and Brittany Cannon's father, Harry Cannon, not be present during visitation due to his propensity for violence; directed respondent to attend in-patient drug treatment and continue the treatment on an out-patient basis as recommended; and also directed the public guardian to "investigate petitioner and (respondent's) home environment" and to report back to the court in that regard.

On February 8, 1994, the court entered an order finding petitioner lacked standing under section 601(b)(1). However, the court exercised plenary jurisdiction to allow the public guardian to bring a petition for custody on grounds that the children were in "imminent danger" should they be placed with respondent, whom the court found suffering from mental illness, emotionally and financially unstable, lacking nurturing skills and violent. In its decision, the court questioned respondent's motives for wanting to regain custody after she admitted converting the children's public aid money for her own use since June 1993. The court then ordered investigations by the Illinois Department of Children and Family Services (DCFS) and the psychiatric institute for respondent, her mother and petitioner.

The court subsequently entered a "caveat" to its decision which stated that several days after writing its opinion, a telephone call was received from a DCFS caseworker pursuant to its order of investigation. During the conversation, the court learned that at least one other report alleging abuse and neglect had been filed concerning respondent. The court also learned that on January 22, 1994, respondent had given birth to a cocaine-addicted baby and had also tested positive for cocaine on that date. To the court's stated dismay, the baby had been released to respondent's custody where Harry Cannon might also reside since he was living with respondent at least from the time of the caseworker's visit.

Petitioner argues she had standing under section 601(b)(2) of the Act, and the trial court was within its jurisdiction to enter the permanent custody order.

Before beginning our analysis, we note that four different statutes address child custody: the Probate Act of 1975 (755 ILCS 5/1—1 *et seq.* (West 1992)); the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 1992)); the Juvenile Court Act of

1987 (see 705 ILCS 405/1—1 *et seq.* (West 1992)); and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 1992)). The statutes differ insofar as the Probate and Illinois Marriage and Dissolution of Marriage Acts require the party seeking custody to first demonstrate standing, while the Juvenile Court and the Adoption Acts lack such precise standing requirements. Moreover, the latter two Acts require a finding of unfitness by clear and convincing evidence while the former two statutes employ the less burdensome "best interest of the child" standard once standing has been determined. See *In re Marriage of Nicholas* (1988), 170 Ill. App. 3d 171, 175, 524 N.E.2d 728, citing *In re Custody of Peterson* (1986), 112 Ill. 2d 48, 53, 491 N.E.2d 1150.

■ To acquire standing to petition for custody of a minor child under section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act, a nonparent must show that the child is not in the physical possession of one of his or her parents. A nonparent failing to satisfy the standing requirement of section 601(b)(2) must proceed under the stricter requirements imposed by the Adoption or Juvenile Court Act. (*Peterson,* 112 Ill. 2d at 52; see *In re Person & Estate of Barnhart* (1992), 232 Ill. App. 3d 317, 321, 597 N.E.2d 1238 (standing requirements apply to Illinois Probate Act).) The purpose of the standing requirement is to preserve the presumed superior rights of natural parents to the custody of their children, although that right is not absolute and does not require a rigid and unthinking construction of section 601(b)(2). *In re Custody of Menconi* (1983), 117 Ill. App. 3d 394, 398, 453 N.E.2d 835.

The Illinois Supreme Court has held that the term "physical custody" under the statute means something more than mere physical possession of the child at the time custody litigation is initiated. (*In re Custody of Gonzalez* (1990), 204 Ill. App. 3d 28, 31, 561 N.E.2d 1276, citing *Peterson,* 112 Ill. 2d at 53-54.) Physical custody has been held to depend upon various factors including who was in physical possession of the child, how that person obtained possession, the duration of the possession and the nature of the possession. (*Gonzalez,* 204 Ill. App. 3d at 31.) Basically, the nonparent must show that the parent has relinquished "legal custody" of the child, rather than merely physical possession. *In re Custody of McCuan* (1988), 176 Ill. App. 3d 421, 427, 531 N.E.2d 102; see *In re Custody of O'Rourke* (1987), 160 Ill. App. 3d 584, 514 N.E.2d 6 (trial court erred in awarding custody to grandparents caring for child on weekly basis for 14 months after mother's death since they could not show father relinquished legal custody); *Peterson,* 112 Ill. 2d 48, 491 N.E.2d 1150.

Whether respondent relinquished legal custody is at issue since

the fathers of the two minor children were not present and clearly had no custodial possession at the time petitioner initiated these proceedings or, as far as the record indicates, at any other time.

The record shows petitioner had physical possession of the children insofar as she provided for their care, health and welfare prior to the initiation of the custody proceeding. (See *Nicholas*, 170 Ill. App. 3d at 178.) With regard to how petitioner assumed their possession, respondent maintains she asked her mother, whom she knew worked full-time, to care for her children "until further notice" since she was unable to cope with "problems" in her life; Laverne then allegedly delivered the children to petitioner with respondent's assent. However, the trial court believed petitioner's testimony that she was called by her daughter Laverne, who begged her to take the children after learning respondent had abandoned them in a state of filth as to their person and surroundings in the apartment.

■ Under either version, and considering the time which had elapsed from when petitioner gained physical possession of the children, respondent had not abdicated her parental responsibilities in such a manner as to confer standing upon petitioner.

The trial court recognized that nonparents usually have standing in two situations. First, the parent may waive custody by voluntarily relinquishing control of the child. See, *e.g.*, *Gonzalez*, 204 Ill. App. 3d 28, 561 N.E.2d 1276 (surviving father living abroad who agreed to relinquish possession of child to grandparents waived objections to grandparent's standing); see also *In re Estate of Brown* (1990), 207 Ill. App. 3d 139, 146-47, 565 N.E.2d 312 (substance abusing mother voluntarily relinquished "some degree of control" of child primarily by adhering to document she signed intended to grant grandparents custody).

Alternatively, the court may determine that the child has been with the nonparent for a substantial period of time. See, *e.g.*, *In re Custody of Bozarth* (1989), 182 Ill. App. 3d 345, 352, 538 N.E.2d 785 (grandparents properly awarded custody of child who lived with them for three years after father relinquished and mother abandoned custody); see also *In re Marriage of Carey* (1989), 188 Ill. App. 3d 1040, 544 N.E.2d 1293 (stepmother had standing under Probate Act where child lived with her and father for over six years prior to father's death); *Menconi*, 117 Ill. App. 3d 394, 453 N.E.2d 835 (grandparents had standing where children lived with them for over six years after mother's death); see also *In re Custody of McCarthy* (1987), 157 Ill. App. 3d 377, 510 N.E.2d 555 (maternal grandparents and maternal aunt and uncle had standing to petition for physical custody of minor children upon death of the custodial parent where

the children were not in the physical custody of the surviving father at the time of the mother's death and were in the temporary custody of the aunt for 11 months following the mother's death and through the custody hearing).

The trial court describes petitioner's physical possession in terms of "months." Although section 601(b)(2) fails to state any durational requirement or guideline, the record does not show that respondent intended to voluntarily and indefinitely relinquish control of the children to petitioner. A parent does not relinquish physical custody every time the child spends an overnight visit with a friend or relative, nor when the task of parenting is performed in a less than adequate manner. (*In re Custody of Barokas* (1982), 109 Ill. App. 3d 536, 544, 440 N.E.2d 1036; see *Hanson v. McGowan* (1990), 197 Ill. App. 3d 708, 712, 555 N.E.2d 80 (mother who left child with parents for less than one week did not voluntarily relinquish control of physical custody).) Illinois courts appear reluctant to find the child has been with the nonparent for a "substantial" period of time if the nonparent had physical custody only for several months. See *O'Rourke*, 160 Ill. App. 3d 584, 514 N.E.2d 6 (14 months); *McCarthy*, 157 Ill. App. 3d 377, 510 N.E.2d 555 (11 months).

Accordingly, the trial court did not err in finding petitioner lacked standing under section 601(b)(2). We now consider whether the trial court had authority to resolve the custody issue based upon equitable principles.

■ Trial courts have plenary jurisdiction over the persons and estates of minors which is derived from the common law and is independent of any authority given by the legislature. (*Zalduendo v. Zalduendo* (1977), 45 Ill. App. 3d 849, 855, 360 N.E.2d 386, citing *People ex rel. Lehman v. Lehman* (1966), 34 Ill. 2d 286, 291, 215 N.E.2d 806; see *In re Estates of Herrod* (1993), 254 Ill. App. 3d 1061, 1064-65, 626 N.E.2d 1334.) Plenary jurisdiction was recognized in such cases as early as 1846 in *Cowles v. Cowles* (1846), 8 Ill. (3 Gilm.) 435, 437, where the court observed:

> "The power of the court of Chancery to interfere with and control, not only the estates but the persons and custody of all minors within the limits of its jurisdiction, is of very ancient origin, and cannot now be questioned. This is a power which must necessarily exist somewhere, in every well regulated society, and more especially in a republican government, where each man should be reared and educated under such influences that he may be qualified to exercise the rights of a freeman and take part in the government of the country. It is a duty, then, which the country owes as well to itself, as to the infant, to see that he is not

abused, defrauded or neglected, and the infant has a right to this protection."[1]

The trial court determined that awarding petitioner permanent custody would serve the best interest of the children based upon evidence that respondent abused (*i.e.*, one child had scars around her ankles as if once tied to a crib) and neglected them (*i.e.*, the children were found "filthy" in a "filthy" apartment and without proper immunizations, and were frequently deposited with anyone including respondent's violent boyfriend). The court also determined that respondent is emotionally unstable, violent and suffers from substance abuse and some mental illness. The court further stated that respondent's motivation for seeking custody was to obtain the children's public aid money for her own use as she admittedly has since June 1993. See *Montgomery v. Roudez* (1987), 156 Ill. App. 3d 262, 509 N.E.2d 499 (nonparent awarded custody since mother, who had emotional problems and no means of income, sought custody to receive public aid).

We recognize the dilemma facing this thoughtful trial judge. Under the trial court's proper reading, petitioner is without standing in the forum in which she has chosen to proceed. However, the evidence clearly shows respondent cannot provide a fit and proper environment in which to parent her two children.

■ Based upon the compelling and exigent circumstances of this case, it is unlikely that any judge would have transferred custody of the children to respondent so that the exercise of plenary powers to provide for the temporary, rather than permanent, custody of the children with petitioner was appropriate. When the interests of our children are at stake we cannot be bound by the form of action. However, the ultimate disposition of the children must be within the statutory framework of the several acts provided by the General Assembly. To hold otherwise, as Justice Cardozo might say, would allow a judge to act as "knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness."[2]

Examining the record, there appears to be clear and convincing evidence as to respondent's unfitness under the criteria established by the Juvenile Court Act, had petitioner chosen to proceed under that statute. Under the judicial system of this State, a circuit court judge is vested with authority to decide any class of cases for which

---

[1] In appellate cases, at least, counsel for the losing party can take heart from *Cowles* as to their professional prospects since, there, the defeated appellant was represented by A. Lincoln of Springfield, Illinois.

[2] B. Cardozo, The Nature of the Judicial Process, 141 (1921).

the law provides subject matter and personal jurisdiction. The administrative separation of our courts into subject matter divisions in large urban areas does not impair that authority. Accordingly, the trial court could have transferred the matter to the special courts designated in Cook County to hear juvenile cases or, by amendment, could have then heard the matter as a petition under the Juvenile Court Act where the issue of standing would not have been an impediment.

Based upon the record, we could presently effect that determination under the aegis of Illinois Supreme Court Rule 366(a)(5).[3] However, because the record should be without any doubt where custody is denied a natural parent, we believe the trial court should have the opportunity to examine the record employing the guidelines set forth in the Juvenile Court Act and, at the court's discretion, to open proofs to add to the record.[4] Therefore, we remand this case to the trial court for the limited purposes of determining whether sufficient evidence exists for its disposition under the Juvenile Court Act. Until such time as the trial court enters such determination, the order entered pursuant to its exercise of plenary authority shall continue.

We next address but disagree with respondent's argument that the trial court improperly ruled on the merits before it ruled on respondent's motion to strike, thereby denying the parties a meaningful opportunity to be heard.

■ The record shows on January 6, 1994, the domestic relations court entered an order, based upon the emergency petition and motion to strike, which maintained the status quo until an expedited hearing on January 11 at which both parties could present witnesses and evidence. The court refrained from ruling on the merits until it first determined standing at the January 11 hearing (see *McCuan*, 176 Ill. App. 3d at 425), and then entered the order on February 8, 1994, to grant permanent custody to petitioner based upon the evi-

---

[3]This rule grants the appellate court authority to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." 134 Ill. 2d R. 366(a)(5).

[4]For example, the trial court could consider for the record the information that during the course of these proceedings respondent has given birth to a cocaine-addicted baby and has tested positive for cocaine on that date. The court may also consider respondent's disposition of the public aid funds with particular regard to whether she has made them available for the children's welfare.

dence presented at the hearing which it considered "more than sufficient to justify an award of custody to [petitioner]."

Respondent further maintains the court improperly entered the order without serving parties not yet before the court who had colorable rights at issue (*i.e.*, "unknown fathers") pursuant to section 601(c) of the Act, which provides that notice of a child custody proceeding "shall be given to the child's parents, guardian and custodian, who may appear, be heard, and file a responsive pleading." 750 ILCS 5/601(c) (West 1992).

The record shows petitioner was aware at the time of the January 11 hearing of one father's identity (Harry Cannon, father of Brittany Denise Cannon) if not also his whereabouts. Specifically, the order dated January 31, 1994, directs that respondent should not exercise her visitation rights in the company of Harry Cannon. The record also reveals that Cannon frequently resided with respondent. However, respondent contends that none of the "unknown fathers" received the requisite notice regarding these proceedings and petitioner does not contest this statement in her response.[5]

■ Illinois law is clear that where a party is given notice, he or she cannot complain that others were not notified. (See *In re Estate of Stanford* (1991), 221 Ill. App. 3d 154, 162, 581 N.E.2d 842 (parties who received notice of heir's petition to vacate orders and to reopen probate estate could not complain that proper notice was not given to other necessary parties).) Since respondent was given adequate notice and an opportunity to present her case before the trial court, she lacks standing to raise this issue on appeal.

■ Respondent finally argues the trial court improperly failed to recuse itself after receiving the DCFS caseworker's telephone call regarding respondent's delivery of a cocaine-dependent child and her positive test for cocaine use on that date. We do not consider the communication to result in reversible error since the trial court explicitly stated in the caveat to the order that the evidence presented at the custody hearing "standing alone, was more than sufficient to justify the award of custody to [petitioner]." Moreover, the communication occurred pursuant to the court's direction for the DCFS caseworker to investigate respondent's "circumstances, mental state, and ability to care for the children."

Further, in any event, the court on remand may consider the issues raised in this phone call on the record.

---

[5]Had the trial court found the "unknown fathers" abandoned their children (*i.e.*, inferring from their conduct that they had no interest in their children's welfare), petitioner may not have had to serve them under section 601(c). See *Bozarth*, 182 Ill. App. 3d 345.

For the foregoing reasons, the judgment of the circuit court is affirmed in part, reversed in part and remanded for consideration in light of the principles set forth in this opinion.

Affirmed in part; reversed in part and remanded.

TULLY, P.J., and CERDA, J., concur.