ORIN HANSON *et al.*, Petitioners-Appellants, v. SONDRA McGOWAN *et al.*, Respondents-Appellees.

Second District   No. 2—89—1043

Opinion filed May 18, 1990.

Jeffrey A. Lasky, of Vernon Hills, for appellants.

Gretchen Fisher, Linda A. Rothnagel, and Bernard H. Shapiro, all of Prairie State Legal Services, Inc., of Waukegan, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

The petitioners, Sandra Hanson and Orin Hanson, appeal from the trial court's order dismissing their petition for custody of Mrs. Hanson's granddaughter under section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 601(b)(2)). The trial court held that the petitioners did not have standing under the Act because they did not demonstrate that the child was not in the physical custody of one of her parents. We affirm.

The child who is the subject of this custody dispute is Angela Marie McGowan, who was born on April 19, 1989. Angela's parents are respondents Sondra McGowan (Sondra) and Lee Douglas. Sondra McGowan was born on May 20, 1972, and is Mrs. Hanson's daughter. Mr. Hanson is Sondra's stepfather. The whereabouts of Lee Douglas are unknown.

After Angela was born, she and Sondra resided with the Hansons, and both Sondra and Mrs. Hanson cared for Angela after her birth. Mrs. Hanson worked in a business in her home and was able to take care of Angela while Sondra attended high school. At some point, the relationship between Sondra and Mrs. Hanson worsened, and, on Tuesday, September 5, 1989, Sondra left the Hansons' household. Sondra did not take Angela with her and did not speak with Mrs. Hanson before leaving. She merely left a note stating that she would not return to the household after school that day and that she would not continue to live there. The note did not state that Sondra would return to take Angela.

On September 12, 1989, the Hansons filed a petition in the circuit court of Lake County seeking custody of Angela. The petition alleged that Angela had been in the "actual custody" of the Hansons since shortly after the child was born. The Hansons also filed a petition seeking guardianship of Angela (see Ill. Rev. Stat. 1987, ch. 110½, par. 11—7), which the trial court consolidated with the first petition under the same case number.

A hearing on the petitions was held on September 15, 1989. At

the hearing, Sondra testified that she was currently a junior in high school and that she was living in Paddock Lake, Wisconsin. Sondra testified that she was employed at a McDonald's restaurant in Antioch, Illinois, where she earned approximately $200 per week. She also was to receive payments from social security until she reached the age of 18. Sondra acknowledged that most of the care given to Angela after her birth was given by Mrs. Hanson, but she noted that there were occasional disagreements about the proper care of the child. According to Sondra, she argued with Mrs. Hanson on September 4, 1989, because Mrs. Hanson felt that Sondra had returned home too late from work that day. She testified that Mrs. Hanson hit her twice with an open hand on her face and shoulder.

Sondra testified that she did not take Angela with her when she left because she "was looking for a better place to stay that night" and that she left the child with the Hansons "so she would have a warm place to stay and treated good until [Sondra] found a better place." It was Sondra's contention that she always intended to return for Angela and that she did so early on the morning of Thursday, September 7, 1989. At this time, Sondra testified, Mrs. Hanson refused to allow Sondra to take Angela with her and stated that Angela's "home is here." Sondra admitted that she had been arrested for a curfew violation when she was found sleeping underneath a stairwell, a situation which was the result of her having "no place else to go" at that time.

Mrs. Hanson also testified at the hearing. According to Mrs. Hanson, Sondra originally helped take care of Angela but had nearly ceased to do so in the month or so before she left home. Mrs. Hanson testified that Sondra had spent an increasing amount of time socializing "uptown" and that she had hardly played with Angela in the last month. Mrs. Hanson denied striking Sondra, and she asserted that Sondra did not return for Angela until September 11. Mrs. Hanson did not deny that she refused to allow Sondra to leave with Angela.

After hearing testimony, the trial court entertained Sondra's motion for a directed finding on the question of whether the Hansons had standing under the Act. Counsel for the Hansons argued that Sondra had relinquished physical custody of Angela and that the child had been integrated into the Hansons' household. Without waiting for counterargument by counsel for Sondra, the trial court held that the Hansons did not have standing under the Act. The court then dismissed both petitions.

In making its ruling, the trial court noted that its role was not "to determine who can better care for the child. This court is here to

determine whether the evidence is strong enough to surmount the strong presumptions that a natural parent is entitled to the custody of his or her child." The court stated:

"Sondra McGowan has not been shown to be irresponsible or unfit or to lack any other elements of standing at this point in time. It may be that she is too young and not as mature as she ought to be but that has not been demonstrated. For these reasons the presumption has not been overcome."

The Hansons now appeal from the dismissal of their petition and advance three main arguments: (1) the trial court placed undue emphasis on the "superior rights doctrine" in reaching its decision; (2) the court improperly focused on the natural mother's fitness when ruling on the Hansons' standing under the Act; and (3) the trial court should have found that the Hansons had standing because Sondra had relinquished physical custody of the child.

With regard to the first two contentions, we note that some of the observations made by the trial court in announcing its judgment may appear extraneous to the question of standing. We believe, however, that the court's remarks, when viewed in their totality, indicate that the court was properly concerned with the question of whether Sondra had relinquished physical custody of her child.

Section 601(b)(2) of the Act provides for the filing of a custody action "by a person other than a parent, *** but only if [the child] is not in the physical custody of one of his parents." (Ill. Rev. Stat. 1987, ch. 40, par. 601(b)(2).) A court may determine whether the petition is in the best interests of the child only after it has been established that the nonparents have standing under the Act. (Ill. Rev. Stat. 1987, ch. 40, par. 602.) This statutory provision recognizes the " 'accepted presumption that the right or interest of a natural parent in the care, custody and control of a child is superior to the claim of a third person.' " (*In re Custody of Peterson* (1986), 112 Ill. 2d 48, 51, quoting *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 508.) It was not inappropriate, then, for the trial court to note the existence of the "superior rights doctrine" upon which section 601(b)(2) is based, so long as its decision was in accord with the dictates of that provision.

Moreover, we believe that the trial court's comments regarding Sondra's fitness as a mother were actually directed toward the question of whether she had, in fact, relinquished physical custody of Angela. Though any discussion of the best interests of the child would have been premature, the trial court properly concerned itself with the nature of Sondra's relationship and contacts with the child to determine whether she had relinquished physical custody. The trial

court's comments are consistent with the notion that "physical custody may [not] be relinquished by default if a parent performs the task of parenting in a less than adequate manner." (*In re Custody of Barokas* (1982), 109 Ill. App. 3d 536, 544.) While it is not entirely accurate to refer to this issue as the natural mother's fitness, we are satisfied that the trial court endeavored to apply the correct legal test.

■ Our focus now is on the question of whether the trial court correctly found that Angela remained in the physical custody of Sondra, her natural mother. Physical custody does not depend on who has physical possession of the child. Factors to be considered in this regard include how the child came into the nonparent's physical possession and the duration of the possession. (*In re Marriage of Santa Cruz* (1988), 172 Ill. App. 3d 775, 783.) We believe that the record makes it eminently clear that Sondra did not relinquish physical custody of Angela. We base our judgment on the result reached by this court in *Santa Cruz*, the facts of which are surprisingly similar to the case at bar.

In *Santa Cruz*, the natural parent and her child lived with the natural parent's mother (the child's grandmother) and stepfather. After the natural mother and the grandmother argued, the natural mother left the household without the child. Approximately two weeks later, the natural mother was surprised to learn that the grandmother had initiated custody proceedings. (*Santa Cruz*, 172 Ill. App. 3d at 779-80.) The court held that the natural mother did not "walk away" from her child; instead, the court felt that the natural mother "walked away from her mother ***. [The natural mother] was not voluntarily relinquishing custody of [the child]; she was relinquishing residence in" her former household. *Santa Cruz*, 172 Ill. App. 3d at 788.

■ Here, too, Sondra made clear her intention to cease living with the Hansons, but she did not indicate any desire to relinquish physical custody of her child. Two to six days after leaving, the respondent returned to the Hanson household to retrieve her child, but Mrs. Hanson refused to allow the child to leave. The Hansons cannot deprive Sondra of the physical custody of her child simply by refusing to return the child to her. (See *Barokas*, 109 Ill. App. 3d at 544.) The Hansons' assistance in caring for Angela did not constitute physical custody of the child by them because Angela and her natural mother "were never separated for an appreciable period and thus the mother never lost physical custody." (*Peterson*, 112 Ill. 2d at 54.) Since Sondra, the natural parent, has not relinquished physical custody of her

child, the Hansons do not have standing under the Act.

The Hansons argue that the facts of this case are more similar to *In re Custody of Menconi* (1983), 117 Ill. App. 3d 394, where it was held that the Act is also intended to promote stability in the child's home environment. The court in *Menconi* found that the grandparents of a child had standing under the Act because the natural parent had relinquished physical custody; the court noted that the child had become "firmly integrated into the grandparents' household." (*Menconi*, 117 Ill. App. 3d at 398.) We find *Menconi* factually inapposite to the instant case. In *Menconi*, the natural parent left the child in the sole care of the grandparents for 6½ years (338 weeks); here, Sondra left her baby with the Hansons for less than one week. We do not believe that, under these circumstances, Sondra has relinquished physical custody of her child.

We, therefore, affirm the judgment of the trial court dismissing the Hansons' petition for custody because they lack standing under the Act. The Hansons concede that the Act's standing provision also applies to their guardianship petition. (See *In re Person & Estate of Newsome* (1988), 173 Ill. App. 3d 376, 379.) Accordingly, we also affirm the trial court's dismissal of the petition for guardianship.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and WOODWARD, JJ., concur.