IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE CUSTODY OF

R.R.K., R.D.K., and L.M.K.,
      Minor Children.

)
)    No. 92-424
)


IN RE THE MARRIAGE OF

JEFF KOLPIN,
      Petitioner,

   and

JEANNETTE KOLPIN,
      Respondent,

   -vs-

)
)    No. 92-495
)

NORMOND and BEVERLY KOLPIN,
      Third-Party Petitioners
         and Appellants.


APPEALS FROM: District Court of the Seventh Judicial District, In and
for the County of McCone; the Honorable Richard G.
Phillips, District Court Judge presiding (No. 92-424)

District Court of the Seventh Judicial District, In and
for the County of Dawson; the Honorable Richard G.
Phillips, District Court Judge presiding (No. 92-495)


COUNSEL OF RECORD:

      For Appellant:

          Rodd A. Hamman; Calton, Hamman & Wolff, Billings, Montana

      For Respondent:

          Richard A. Simonton; Simonton, Howe & Schneider,
          Glendive, Montana

          Richard L. Burns, Attorney at Law, Glendive, Montana
          (for the children)

FILED

AUG 27 1993

Ed Smith
Filed CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: April 20, 1993

Decided: August 27, 1993

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Normond and Beverly Kolpin (the Kolpins) appeal from orders of the Seventh Judicial District Court, Dawson County, and the Seventh Judicial District Court, McCone County, denying and dismissing their efforts to seek custody of their grandchildren, imposing sanctions and awarding certain attorney's fees. The appeals from the Dawson County dissolution proceeding and McCone County custody action were consolidated by this Court. We affirm in part, reverse in part and remand.

We phrase the issues on appeal as follows:

1) Are non-parents entitled to seek custody of a child under the Uniform Marriage and Divorce Act, through either an independent custody proceeding or intervention in a dissolution proceeding?

2) Did the District Court err in imposing Rule 11 sanctions on the Kolpins in the custody action?

3) Did the District Court err in ordering the Kolpins to pay Jeff Kolpin's share of the children's attorney's fees in the dissolution action?

4) Did the District Court err in awarding Jeannette Kolpin attorney's fees incurred in opposing the Kolpins' motion for a stay of execution in the dissolution action?

Jeff and Jeannette Kolpin were married in March of 1982. Due to inadequate health services where the couple resided, Jeannette soon moved to Billings to live with Jeff's parents, the Kolpins, pending the birth of her and Jeff's first child. Russell Kolpin was born on May 21, 1982, and Jeannette and Russell remained with

2

the Kolpins for approximately one month following his birth. In October, 1983, Jeannette and Russell moved back in with the Kolpins to facilitate Jeannette's psychological treatment at a nearby clinic. During this stay, Jeff and Jeannette's second son, Raymond, was born on December 16, 1983. Jeannette and the two children lived with the Kolpins until February, 1984. Jeannette and the children also lived with the Kolpins for approximately two months following the birth of a third child, Leanne, on June 26, 1985.

In April, 1987, Jeff and Jeannette brought all three children to live with the Kolpins while they attempted to work out their marital difficulties. On April 9, 1987, Jeff Kolpin executed an affidavit directing the Kolpins to care for the three children; the document stated that the children were placed in the Kolpins' care due to Jeannette's hospitalization and out-patient treatment for mental disorders. In 1988, Jeff and Jeannette separated. Jeff moved to Glendive, Montana, and Jeannette moved to her parents' ranch in Circle, Montana.

All three children continued to live with the Kolpins until August 5, 1988. On that date, Jeannette and her parents, Joe and Elaine Wittkopp, arrived in Billings and told the Kolpins that they were taking the two younger children on a picnic. Raymond and Leanne were not returned to the Kolpins at the end of the day; instead, the Wittkopps took the two children back to Circle.

Russell was visiting his father on the day Raymond and Leanne were taken to Circle. Russell continued to live in Billings with

3

the Kolpins until he moved in with Jeff in Glendive in September, 1988. The Kolpins had frequent contact with Russell during the time he lived with his father. When Jeff began working night shifts, Beverly Kolpin moved to Glendive and rented the apartment above Jeff's to care for Russell. After the 1988-89 school year, Russell and Beverly returned to live in Billings. Russell continued to live with the Kolpins.

Jeff Kolpin filed a petition for dissolution in February of 1989. As a result of the parents' dispute over child custody, the District Court appointed an attorney to represent the interests of the children; the court ordered Jeff to pay for the children's attorney's fees.

The Kolpins filed a petition for grandparents' visitation rights as a separate cause of action from the dissolution proceeding in June, 1989. In October of 1989, they filed a motion to intervene in the dissolution action, seeking custody of the three children and joinder of their visitation action with the dissolution action. After a hearing on the Kolpins' motion for intervention and joinder, Dawson County District Court Judge Dale Cox granted the Kolpins' motion for joinder of the visitation claim with the dissolution action, but denied their motion to intervene regarding custody. The court did not issue findings, conclusions or a supporting memorandum with this order.

In November of 1990, in conjunction with a contempt citation for failure to pay costs assessed against him, the court struck Jeff's request for custody and issued an order precluding Jeff from

4

presenting evidence against an award of custody to Jeannette. Jeff moved for relief from the order, which was denied after a hearing. Soon after the hearing, Jeff disappeared. Because Jeff's counsel could not locate him, the court granted counsel's motion to withdraw from the proceedings. District Court Judge Richard Phillips assumed jurisdiction of the dissolution proceeding in March, 1991.

In March of 1992, the Kolpins filed an independent petition for custody of the three children in McCone County, where Raymond and Leanne resided. Jeannette moved to dismiss the petition and requested sanctions against the Kolpins under Rule 11, M.R.Civ.P. The District Court, Judge Phillips presiding, dismissed the Kolpins' independent petition for custody and awarded Jeannette attorney's fees under Rule 11, M.R.Civ.P.

Judge Phillips also presided over the hearing in the Dawson County dissolution action on June 8, 1992. Because Jeannette had agreed that the Kolpins were entitled to visitation and the court had denied their motion to intervene regarding custody, the District Court allowed the Kolpins to present evidence only regarding the amount of visitation they believed was appropriate.

The District Court issued findings of fact, conclusions of law and decree of dissolution on July 1, 1992. The court determined that it was in the best interests of the children to award custody to Jeannette, with reasonable visitation rights to Jeff and the Kolpins. The court expressed concerns about Jeannette's ability to care for the three children but concluded that, with the help of her parents and sister-in-law, Jeannette could adequately care for

the children in Circle. The District Court also ordered the Kolpins to pay half of the children's attorney's fees, because Jeff had "no intention of doing so."

The Kolpins subsequently filed a motion for a stay of execution regarding Russell's custody. The District Court denied the stay motion. Although the court concluded the motion was made in good faith, it ordered the Kolpins to pay Jeannette's attorney's fees incurred in opposing the motion. This appeal follows.

Are non-parents entitled to seek custody of a child under the Uniform Marriage and Divorce Act, through either an independent custody proceeding or intervention in a dissolution proceeding?

The Kolpins contend that § 40-4-211, MCA, expressly entitles them to petition for custody of the three children and, consequently, entitles them to intervene in the dissolution action. They assert that the District Courts erred as a matter of law in dismissing their independent petition for custody in McCone County (DR 92-07) and denying their motion to intervene in Dawson County (DR 89-011). Our review of a court's legal conclusion is plenary. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603.

Section 40-4-211, MCA, sets forth the procedural and jurisdictional standards for a child custody proceeding under the Uniform Marriage and Divorce Act (the Act). Subsection (4) of § 40-4-211, MCA, reads:

> (4) A child custody proceeding is commenced in the district court:
>
> (a) by a parent, by filing a petition:
> (i) for dissolution or legal separation; or
> (ii) for custody of the child in the county in

6

which he is permanently resident or found; or

> (b) by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents.

The statute provides three distinct methods of instituting a child custody proceeding: 1) a parent may file a petition for dissolution or legal separation; 2) a parent may file a petition for custody; or 3) a non-parent may file a petition for custody. This Court must give effect to each provision of the statute; it is not our function to omit what the legislature has included. Section 1-2-101, MCA.

The plain language of § 40-4-211(4)(b), MCA, authorizes a non-parent to commence a custody proceeding by filing a petition. However, it is equally clear that the non-parent must satisfy the "standing" requirement by demonstrating that the child is not in the physical custody of one of his parents. Henderson v. Henderson (1977), 174 Mont. 1, 5, 568 P.2d 177, 179.

In Henderson, the mother and father each were awarded custody of one of their children following dissolution of their marriage; the couple then agreed that the father should retain temporary custody of both children pending further proceedings. When the father died unexpectedly, an aunt filed a petition for custody of both children under § 48-331(4)(b), RCM (1947), the predecessor to § 40-4-211(4)(b), MCA.

We concluded that "[t]he aunt did not have standing to begin a custody proceeding. . ." under the statute. Henderson, 568 P.2d

7

at 179. Finding no merit in the aunt's argument that she met the standing requirement because the children were being cared for by a babysitter at the time of the father's death, we stated:

> "Physical custody" is not limited to having actual, immediate control of the physical presence of the child. Rather, this phrase relates to the custodial rights involved in the care and control of the child. [Citations omitted.] To interpret this phrase otherwise would allow a non-parent to file a petition for custody anytime the child is out of the physical presence of the parent or parents, even if for a few minutes or under the watchful eyes of an authorized babysitter.

Henderson, 568 P.2d at 179. We emphasized that, upon the father's death, the mother assumed the legal right to custody of her children pursuant to statute. The mother had not relinquished that custody. Henderson, 568 P.2d at 179. We went on to explain that, where one of the parents has physical custody of the child, a non-parent may seek custody only under the stricter standards of the abuse, neglect and dependency statutes. Henderson, 568 P.2d at 181.

Thus, pursuant to Henderson, the standing requirement for a non-parent seeking custody does not depend on who has actual, physical possession of the child at the moment the petition is filed. Rather, the court should focus on whether the parent actually relinquished physical custody of the child and how long the parent and child were separated.

While Henderson is the only case in which this Court has focused on the standing requirement contained in § 40-4-211(4)(b), MCA, the courts of Illinois have developed a comprehensive body of case law interpreting Illinois' statutory counterpart. In

8

accordance with the mandate of § 40-4-102, MCA, to apply and construe the provisions of the Uniform Marriage and Divorce Act uniformly with those states that have enacted it, we properly look to the Illinois cases for guidance in further developing Montana law on this issue.

The Illinois courts have focused on two factors in determining whether a child is in the physical custody of the parent for purposes of non-parental standing to commence custody proceedings. These factors are: 1) whether the parent voluntarily relinquished physical custody of the child; and 2) the duration of the separation of the parent and child. See In re Custody of Peterson (Ill. 1986), 491 N.E.2d 1150, 1152; In re Custody of Barokas (Ill. App. 1982), 440 N.E.2d 1036, 1042; In re Custody of Menconi (Ill. App. 1983), 453 N.E.2d 835, 838-9. When these factors are weighed, the court can then determine whether the child is in the physical custody of his or her parent for purposes of non-parental standing to commence a custody proceeding. An examination of two factually distinct Illinois cases illustrates the interplay between these factors.

In Menconi, the father asked his parents to care for his child shortly after her mother died; the child continued to live with her grandparents for six and a half years. Menconi, 453 N.E.2d at 838. The father then appeared and removed the child from the grandparents' home by force. When he refused to return the child, the grandparents filed a petition for custody under the Act. The father argued that the grandparents could not meet the standing

9

requirement because he had physical custody of his child. Menconi, 453 N.E.2d at 837.

The Illinois Court of Appeals disagreed, stating that the father could neither gain physical custody nor deprive the grandparents of physical custody by abducting the child. Menconi, 453 N.E.2d at 838. The court refused to allow the father to gain an advantage through his wrongful conduct by forcing the grandparents to proceed under the stricter standards of the juvenile court act. The court concluded that, because the father had voluntarily relinquished custody of his child and she had lived with her grandparents for six and a half years, the grandparents had standing to seek custody under the Act. Menconi, 453 N.E.2d at 839.

In Hanson v. McGowan (Ill. App. 1990), 555 N.E.2d 80, 83, a mother and child lived with the child's paternal grandparents following the disappearance of the father. The mother left to find better housing and returned for her child about three days later. The grandparents refused to relinquish the child and filed a petition for custody. Hanson, 555 N.E.2d at 81. The Illinois Court of Appeals concluded that the grandparents did not have standing to file a petition, as the mother had not relinquished physical custody of her child. Hanson, 555 N.E.2d at 83. In contrast to Menconi, the mother voluntarily left her child at the grandparents, but the three-day duration of the separation was not sufficient to divest the mother of physical custody.

The Illinois courts also have clarified a procedural aspect

10

regarding this issue. Once the standing requirement is met and the custody proceeding goes forward under the Act, the court determines custody based on the best interests of the child; a finding of unfitness is not required. Montgomery v. Roudez (Ill. App. 1987), 509 N.E.2d 499, 501-2.

We adopt the approach of the Illinois courts and conclude that § 40-4-211(4)(b), MCA, entitles a non-parent to commence a child custody proceeding by filing a petition, provided the non-parent can establish standing by demonstrating that the child is not in the physical custody of his or her parent or parents. To determine whether the parent has physical custody of the child, the court must consider whether the parent's initial relinquishment of physical custody was voluntary and examine the duration of the separation of parent and child. If the non-parent successfully establishes standing, the custody determination will be based on the best interests of the child pursuant to § 40-4-212, MCA.

Jeannette argues that our decision in In re Marriage of Miller (1992), 251 Mont. 300, 825 P.2d 189, mandates rejection of any entitlement in non-parents to seek custody under the Act. Indeed, in the McCone County proceeding, the District Court relied on Miller in dismissing the Kolpins' petition. According to the District Court, Miller holds that non-parents may not bring an independent action for custody and that custody can be taken from a natural parent only through the procedures set forth in the child abuse, neglect and dependency statutes. Notwithstanding the District Court's good faith effort in applying Miller here, Miller

11

is distinguishable.

In Miller, the mother initially was awarded custody of the couple's two children and her son Christopher from a prior relationship. The Department of Family Services subsequently transferred physical custody of the children from their mother to Mr. Miller. Three months later, Mr. Miller filed a petition to modify custody of all three children, arguing that he met the standing requirement of § 40-4-211(4)(b), MCA, when he filed the petition because he had physical custody of all three children. We concluded that Mr. Miller had met the modification requirements of § 40-4-219, MCA, as to the two children who were issue of the marriage. His petition to modify his stepson's custody resulted in the language relied on by the District Court here.

Miller did not involve an original custody proceeding. Rather, Mr. Miller sought to modify custody. As such, the provisions of § 40-4-211(4), MCA, which address the commencement of a child custody proceeding, were not applicable there. We held that a change of custody as to Christopher required the procedures contained in the child abuse, neglect and dependency statutes. Miller, 825 P.2d at 193.

In addition, it is clear that Mr. Miller could not have prevailed on his § 40-4-211(4)(b), MCA, argument in an original custody proceeding under the standards enunciated herein. There, the Department of Family Services removed the children from their mother pursuant to § 41-3-301, MCA; Mrs. Miller did not voluntarily relinquish physical custody of Christopher. Because Mr. Miller

12

could not have met the standing requirement for a non-parent to seek custody under the Act, the abuse, neglect and dependency statutes provided the appropriate avenue regarding custody of Christopher. See Henderson, 568 P.2d at 181. To apply Miller to the facts now before us would effectively delete § 40-4-211(4)(b), MCA, from the Act.

Returning to the Kolpins' independent custody proceeding in McCone County Cause No. DR 92-07, we express no opinion as to whether the Kolpins can establish standing sufficient to maintain an independent custody action under § 40-4-211(4)(b), MCA. Neither the District Court in McCone County nor Jeannette has had an opportunity to address the Kolpins' petition under the parameters set forth herein. We conclude, however, that the District Court erred in summarily dismissing the Kolpins' independent petition for custody.

The Kolpins also appeal the denial of their motion to intervene in the Dawson County dissolution proceeding, Cause No. DR 89-011. They assert that their right to commence an independent proceeding for custody gives them a corresponding right to intervene regarding custody in the dissolution proceeding. This Court recently clarified the standards regarding motions to intervene. In In re Marriage of Aniballi (Mont. 1992), 842 P.2d 342, 344, 49 St.Rep. 995, 996, we held that a prima facie showing must be made to support a claim for intervention under Rule 24(a), M.R.Civ.P. Thus, a non-parent seeking custody must make a prima facie showing that the child is not in the physical custody of his

13

or her parents to intervene in a dissolution proceeding.

We emphasize that the right of intervention premised on an entitlement to file an independent petition for custody under § 40-4-211(4)(b), MCA, does not infringe on the district court's discretion regarding all other intervenors, as set forth in § 40-4-211(5), MCA:

> Notice of a child custody proceeding shall be given to the child's parent, guardian, custodian, those persons having physical custody of the child, and all other contestants, who may appear, be heard and file a responsive pleading. The court, upon a showing of good cause, may permit intervention of other interested parties.

Rather, the intervention discussed in subsection (5) parallels the permissive intervention of Rule 24(b), M.R.Civ.P. For example, once a child custody proceeding has commenced under § 40-4-211(4), MCA, the district court may, in its discretion, allow intervention by interested parties who may not be seeking custody but wish to appear and be heard. We repeat, however, that if a non-parent moves to intervene regarding custody in an ongoing dissolution proceeding and presents a prima facie case demonstrating that the child is not in the physical custody of his or her parents, a district court must grant the motion.

Here, the Dawson County District Court issued no findings, conclusions or memoranda with its order denying the Kolpins' motion to intervene in the dissolution proceeding. Therefore, we cannot review the legal basis for the court's denial of the motion to intervene. For reasons similar to those discussed above, we conclude that the District Court erred in summarily denying the

14

Kolpins' motion to intervene in the Dawson County dissolution proceeding, Cause No. DR 89-011.

We note here Jeannette's argument that denial of the Kolpins' motion to intervene is not properly before us. She contends that the denial of the Kolpins' motion to intervene is not a separately appealable order under Rule 1, M.R.App.P., and, therefore, it is not appealable at any time. She argues that the Kolpins were obligated to seek a writ of supervisory control within thirty days of the District Court's denial of their motion to intervene. These arguments verge on the frivolous.

It is true that an order denying a motion to intervene is not an appealable order under Rule 1, M.R.App.P. However, the proper appeal from such an interlocutory order lies after entry of final judgment. Rule 2(a), M.R.App.P.; Continental Ins. Co. v. Bottomly (1988), 233 Mont. 277, 280, 760 P.2d 73, 75-6; Estate of Schwenke v. Becktold (1992), 252 Mont. 127, 130-1, 827 P.2d 808, 810. This is the avenue taken by the Kolpins here.

Furthermore, although an application for a writ of supervisory control is sometimes used to seek immediate review of an interlocutory order, such applications are justified only where there is no remedy by appeal or other remedial procedure to provide relief and where extraordinary circumstances are present. State v. Tollefson (1989), 239 Mont. 305, 306, 780 P.2d 621, 621. The Kolpins' failure to seek a writ of supervisory control following the denial of their motion to intervene does not affect their right of appeal. We conclude that the Kolpins properly appealed the

15

denial of their motion to intervene after the District Court entered its findings of fact, conclusions of law and decree of dissolution.

Did the District Court err in imposing Rule 11 sanctions on the Kolpins in the custody action?

In imposing sanctions against the Kolpins in their independent custody proceeding, the District Court determined that the Miller decision was so clear and unambiguous that the Kolpins' petition for custody could not be said to be warranted by existing law or by a good faith argument to change the law. We have stated that to avoid sanctions under Rule 11, M.R.Civ.P., it is not necessary that a party be correct in his or her interpretation of the law, but only that the party make a good faith argument within his or her view of the law. In re Adoption of R.D.T. (1989), 239 Mont. 33, 36, 778 P.2d 416, 418.

The Kolpins based their custody petition on the plain language of § 40-4-211, MCA, and we have concluded that § 40-4-211, MCA, entitles a non-parent to commence a custody proceeding if the standing requirement is demonstrated. We conclude, therefore, that Rule 11 sanctions were not warranted in this situation. See Sundheim v. Reef Oil Corp. (1991), 247 Mont. 244, 258, 806 P.2d 503, 512.

Did the District Court err in ordering the Kolpins to pay Jeff Kolpin's share of the children's attorney's fees in the dissolution action?

Soon after the dissolution proceeding was commenced, the District Court appointed an attorney to represent the interests of

16

the children and ordered Jeff to pay the children's attorney's fees. In its findings of fact and conclusions of law, however, the District Court ordered the Kolpins to pay one-half of those fees; the reason given was that Jeff had "no intention of doing so." The Kolpins assert that this rationale did not constitute a legal basis for ordering them to pay Jeff's obligation. We agree. The Kolpins have no responsibility to assume the debts of their adult son and the court cited no authority permitting it to shift this obligation to the Kolpins.

Jeannette contends that § 40-4-110, MCA, authorizes the District Court to require the Kolpins to pay Jeff's share of the children's attorney's fees. Section 40-4-110, MCA, reads:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees . . . .

Section 40-4-110, MCA, is not applicable here. This provision relates to awarded costs and attorney's fees of the other party under certain circumstances. Jeff's share of the children's attorney's fees was not incurred by Jeannette as contemplated by the statute. Therefore, § 40-4-110, MCA, simply is not available as a basis for requiring the Kolpins to pay Jeff's obligation.

We note that the District Court did not rely on the language of § 40-4-205, MCA, in its findings and conclusions, nor do the parties argue that § 40-4-205, MCA, is applicable. Accordingly, we do not address whether the District Court could have required the Kolpins to pay for half of the children's attorney's fees pursuant

17

to § 40-4-205, MCA. We conclude, however, that the District Court erred in ordering the Kolpins to pay one-half of the children's attorney's fees in the dissolution action on the basis given.

Did the District Court err in awarding Jeannette Kolpin attorney's fees incurred in opposing the Kolpins' motion for a stay of execution in the dissolution action?

Following entry of the dissolution decree in Dawson County, the Kolpins applied for a stay of execution concerning the custody of Russell and filed their notice of appeal of the findings of fact, conclusions of law and decree of dissolution. In opposing the stay motion, Jeannette requested attorney's fees under § 40-4-110, MCA, or Rule 11 sanctions. The District Court denied the stay motion, concluding that the reunification of the children was of primary importance. Because Russell had resided with the Kolpins for several years, the District Court reasoned that the Kolpins' request for continuation of the arrangement pending appeal was not taken in bad faith. However, the court concluded that due to Jeannette Kolpin's limited financial resources, it was appropriate to award her attorney's fees incurred in responding to the motion for stay of execution.

The Kolpins argue that because the notice of appeal was filed, the District Court had jurisdiction to consider the stay but did not have jurisdiction to award attorney's fees. They also contend that, because the Wittkopps are paying Jeannette's attorney's fees and the purpose of attorney's fees under § 40-4-110, MCA, is to equalize the positions of the parties, an award of attorney's fees to Jeannette was not warranted.

18

While the filing of a notice of appeal normally vests jurisdiction in this Court for all but ancillary matters, the district court is not completely powerless. Churchhill v. Holly Sugar Corp. (1981), 192 Mont. 533, 536, 629 P.2d 758, 760; State ex rel. Kaasa v. District Court (1978), 177 Mont. 547, 549, 582 P.2d 772, 774. In Kaasa, a wife applied for temporary maintenance pending an appeal of the decree of dissolution. The district court declined to rule on the basis that the filing of the notice of appeal divested it of jurisdiction to act in the divorce. Kaasa, 582 P.2d. at 774. We concluded that the district court had jurisdiction to act on a petition for temporary maintenance filed after the notice of appeal, relying in part on that portion of the attorney's fees provision of the UMDA, which read:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this act and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or <u>after entry of judgment</u>. . . . [Emphasis added.]

Section 48-327, RCM (1977 Cum. Supp.); Kaasa, 582 P.2d at 774. Kaasa illustrates the unique character of the district court's ongoing jurisdiction in dissolution proceedings. Section 40-4-110, MCA, specifically allows for attorney's fees incurred after entry of judgment. We conclude that the District Court had jurisdiction to award attorney's fees pursuant to § 40-4-110, MCA, in this situation.

Having cleared the jurisdictional hurdle, the question remains whether the award of attorney's fees was appropriate. A district

19

court's award of attorney's fees under § 40-4-110, MCA, will not be disturbed absent an abuse of discretion. In re Marriage of Becker (1990), 244 Mont. 469, 477, 798 P.2d 124, 129. Here, the District Court considered the financial resources of both parties and concluded that the Kolpins should pay for the attorney's fees Jeannette incurred in opposing the motion for a stay. Although Elaine Wittkopp testified that the Wittkopps were paying Jeannette's attorney's fees, she also testified that Jeannette had paid some of the fees. Further, we find no evidence of record that Jeannette is not required to reimburse the Wittkopps for the fees. See In re Marriage of Thompson (1981), 193 Mont. 127, 129-30, 630 P.2d 243, 244. We conclude that the District Court did not abuse its discretion in awarding Jeannette attorney's fees incurred in opposing the Kolpins' motion for a stay of execution in the dissolution action.

To recap the effect of this opinion on the two dockets below, we conclude that the District Court erred in dissolution proceeding Cause No. DR 89-011 in summarily denying the Kolpins' motion to intervene and in ordering the Kolpins to pay half of the children's attorney's fees because Jeff did not intend to do so; the District Court did not err in awarding Jeannette attorney's fees in opposing the Kolpins' motion to stay execution. We remand Cause No. DR 89-011 for further proceedings consistent with this opinion, emphasizing that the findings of fact, conclusions of law and decree of dissolution, to the extent not discussed herein, are

20

unaffected by this opinion.

In custody action Cause No. DR 92-07, we conclude that the District Court erred in summarily dismissing the Kolpins' petition for custody and in imposing Rule 11 sanctions against the Kolpins. We remand that action only for such further proceedings regarding the sanctions as may be necessary, noting that the matter of custody will be determined on remand in Cause No. DR 89-011. Finally, we note that it appears that neither party has any further contacts with Dawson County; in this regard, the parties may wish to stipulate to hold any further hearings which may be necessary in McCone County.

Affirmed in part, reversed in part, and remanded.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
The Honorable Dorothy McCarter,
Judge of the District Court, sitting
for Retired Justice R.C. McDonough

21

August 27, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Rodd A. Hamman & Robin A. Wolff
Calton, Hamman & Wolff
2075 Central Ave.
Billings, MT  59102

Richard A. Simonton and Marvin Howe
Simonton, Howe & Schneider
P.O. Box 1250
Glendive, MT  59330

Richard L. Burns
Attorney at Law
P.O. Box 6
Glendive, MT  59330

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy