No. 97-140

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE CUSTODY OF C.K.J., a minor.

RONNIE JACOBSEN and MARTHA JACOBSEN,

Petitioners and Appellants,

v.

MALISSA JACOBSEN and RODNEY JACOBSEN,

Respondents and Respondents.

FILED

OCT 10 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Sixth Judicial District,
                In and for the County of Sweet Grass,
                The Honorable William Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Bard G. Middleton, Attorney at Law,
                Billings, Montana

        No appearance was made by the respondents.

                                        Submitted on Briefs: August 28, 1997

                                        Decided: October 10, 1997

Filed:

_____
                    Clerk

Justice Jim Regnier delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Petitioners and appellants, Ronnie and Martha Jacobsen, appeal from an order of the Thirteenth Judicial District Court, Yellowstone County, denying their petition for custody of their granddaughter. For the reasons stated below, we affirm.

Having considered appellants' arguments, we find the following issues dispositive on appeal:

1.     Did the District Court err in concluding it was in C.K.J.'s best interest to be transferred from the care and custody of her grandparents to that of her mother?

2.     Did the District Court err in finding C.K.J.'s mother did not abandon her or otherwise relinquish her parental rights?

## FACTUAL AND PROCEDURAL BACKGROUND

C.K.J. was born on June 26, 1991, to Malissa Danes, her biological mother, and Rodney Jacobsen, her biological father. Rodney Jacobsen and Malissa Danes married in June 1992, and divorced two years later. The decree of dissolution, entered by a district court in Nebraska on June 28, 1994, did not decide the issue of custody.

Petitioners and appellants Ronnie and Martha Jacobsen (the Jacobsens), are C.K.J.'s paternal grandparents. The parties do not dispute that, following C.K.J.'s birth in June 1991,

2

Rodney Jacobsen and Malissa Danes, formerly known as Malissa Jacobsen, experienced financial and marital difficulties which prompted them to place their daughter in the Jacobsens' care on a number of occasions. Indeed, the record indicates that C.K.J. has spent the majority of her young life in her grandparents' household. The Jacobsens cared for C.K.J. on an intermittent basis from her birth until November 1993. Beginning in the fall of 1993, the Jacobsens cared for C.K.J. on a continuous basis through April 1996. Rodney Jacobsen and Malissa Danes traveled from Nebraska to Montana in March 1994 in an attempt to retrieve custody of C.K.J., but failed to do so upon intervention by a social worker for the Montana Department of Family Services. The social worker placed a 48-hour hold on C.K.J., and Danes testified it was her understanding that the Department of Family Services had assumed legal control over her daughter.

Danes eventually moved to Florida, and on April 12, 1996, she and her boyfriend, Randy Porter, arrived at the Jacobsens' house, to pick up C.K.J. and return with her to Florida. Danes stated that, prior to her arrival at the Jacobsens, she had spoken with a Stillwater County Attorney who advised her she could take C.K.J. from the Jacobsen household. The Jacobsens permitted Danes and Porter to leave with C.K.J. on April 12, 1996.

On April 23, 1996, the Jacobsens filed a petition for custody naming Malissa Jacobsen a/k/a Danes, and their son, Rodney Jacobsen, as respondents. The Jacobsens also filed an *ex parte* motion for temporary assignment of custody, which the court granted on April 25,

3

1996. Rodney Jacobsen subsequently filed an affidavit indicating he did not oppose his parents' petition for custody of C.K.J.

Following a show cause hearing on May 14, 1996, the court granted the Jacobsens' temporary custody of C.K.J. The District Court held a final custody hearing on August 13, 1996, following which it issued an order denying the Jacobsens' petition for custody and granting custody of C.K.J. to Danes. It is from this order, dated September 13, 1996, that the Jacobsens now appeal.

On March 10, 1997, Danes' attorney filed a motion to withdraw as Danes' counsel of record in this case. The District Court granted counsel's motion on March 25, 1997. Danes is thus proceeding pro se for the purposes of this appeal.

DISCUSSION

We review a district court's custodial determination for an abuse of discretion. *In re Marriage of Dreesbach* (1994), 265 Mont. 216, 220-21, 875 P.2d 1018, 1021; *In re Matter of S.P., C.P., H.M., J.M., K.M., Y.M.* (1990), 241 Mont. 190, 194, 786 P.2d 642, 644. We afford the district court's decision "all reasonable presumptions as to the correctness of the determination" and will not disturb the decision on appeal "unless there is a mistake of law or a finding of fact not supported by substantial credible evidence that would amount to a clear abuse of discretion." *In re Matter of S.P.*, 241 Mont. at 194, 786 P.2d at 644 (quoting *In re Matter of R.A.D.* (1988), 231 Mont. 143, 148, 753 P.2d 862, 865). *See also Dreesbach*, 256 Mont. at 220-21, 875 P.2d at 1021. We thus proceed under the presumption that the

4

district court's custody determination is correct unless not supported by credible evidence. *In re Matter of S.P.*, 241 Mont. at 194, 786 P.2d at 644.

## ISSUE 1

Did the District Court err in concluding it was in C.K.J.'s best interest to be transferred from the care and custody of her grandparents to that of her natural mother?

The Jacobsens petitioned the court for custody of C.K.J. pursuant to § 40-4-211(4)(b), MCA, which provides that a nonparent may commence a custody proceeding only if the child is not in the physical custody of a parent. Implicit in the District Court's September 13, 1996, order was the conclusion that the Jacobsens had standing to seek custody of C.K.J.

Where a nonparent properly commences a custody proceeding pursuant to § 40-4-211(4)(b), MCA, we have held that, "[o]nce the standing requirement is met and the custody proceeding goes forward under the [Uniform Marriage and Divorce] Act, the court determines custody based on the best interests of the child; a finding of unfitness is not required." *In re Custody of R.R.K., R.D.K., and L.M.K.* (1993), 260 Mont. 191, 199-200, 859 P.2d 998, 1004.

Accordingly, the District Court applied the best interest standard in making a custody determination in this case. Following consideration of the record before it, the District Court concluded that "this court must carefully protect parental rights, and it is in [C.K.J.'s] best interest that she be returned to the custody and control of her mother subject to visitation with [the Jacobsens] and [her father]." The Jacobsens argue the court erred in so concluding.

5

The Jacobsens first contend the court erred by failing to state the facts upon which it relied in determining it was in C.K.J.'s best interest that her mother receive custody. In a related argument, the Jacobsens additionally contend the District Court failed to enter appropriate findings of fact to support its conclusion that it was in C.K.J.'s best interest to be returned to the custody of her mother. Specifically, the Jacobsens note that the District Court made no specific findings of fact regarding "the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who may significantly affect the child's best interest." *See* § 40-4-212(1)(c), MCA. The Jacobsens also contend the court should have entered findings of fact regarding C.K.J.'s "adjustment to home, school, and community." *See* § 40-4-212(1)(d), MCA.

Section 40-4-212, MCA, delineates those factors which a court shall consider in making a custody determination in accordance with the best interest of the child. Those factors include:

(a) the wishes of the child's parent or parents as to custody;
(b) the wishes of the child as to a custodian;
(c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who may significantly affect the child's best interest;
(d) the child's adjustment to home, school, and community;
(e) the mental and physical health of all individuals involved;
(f) physical abuse or threat of physical abuse by one parent against the other parent or the child; and
(g) chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent.

Section 40-2-212(1), MCA.

6

On appeal, the Jacobsens argue the District Court erred in failing to enter findings of fact regarding C.K.J.'s interaction with her parents, siblings, or with anyone else who might significantly affect her best interest, and similarly failed to enter findings regarding C.K.J.'s "adjustment to home, school, and community." *See* § 40-4-212(1)(c), (d), MCA. Indeed, review of the District Court's findings of fact indicates that, apart from its observation that there was no evidence to suggest that Danes and C.K.J. did not have a good relationship with one another, the District Court did not enter specific findings of fact addressing these factors.

We have held, however, that "[a]ll the [best interest of the child] statute requires is that the court consider the factors listed. It is not required to make specific findings concerning each element, though it must express the essential and determining facts upon which its conclusions rest." *In re Marriage of Syverson* (Mont. 1997), 931 P.2d 691, 703-04, 54 St. Rep. 32, 40 (quoting *In re Marriage of Fesolowitz* (1993), 258 Mont. 380, 388, 852 P.2d 658, 663). We review a district court's findings of fact regarding custody to determine whether the findings in question are clearly erroneous. *Syverson*, 931 P.2d at 703, 54 St. Rep. at 40. Findings of fact upon which a custody determination rests "are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made." *Syverson*, 931 P.2d at 903, 54 St. Rep. at 40.

Here, among the findings of fact upon which the District Court based its conclusion that it would be in C.K.J.'s best interest to return to the custody of her mother were the following:

7

(a)     While the Court finds that respondent Malissa Danes could have been in more contact with [C.K.J.] and could have used different means in reaching her goal of being reunited with her daughter, there is no evidence other than Malissa Danes has a good mother/daughter relationship with [C.K.J.] at present and would now serve as a fit caretaker for the child. [Finding of Fact No. 9.]

(b)     That [Danes] is presently going to school, has a part-time job, has completed a parenting class, and it appears to the Court that she has taken steps to improve her life and that she can provide a good home for [C.K.J.]. [Finding of Fact No. 12.]

(c)     It is clear that the respondent Malissa Danes will provide a suitable home and environment for [C.K.J.]. [Finding of Fact No. 13.]

(d)     That it is in [C.K.J.'s] best interests to have visitation with [the Jacobsens] and her father.

In its remaining findings, the court additionally noted that, at the time of its decision, Danes had an eleven-month-old daughter living with her, and had undergone a "financial and lifestyle transformation" which would enable her to properly parent her daughter.

Further, although the court made no specific findings regarding certain factors delineated in § 40-4-212, MCA, it heard testimony at two separate custody hearings which addressed those factors and supports the court's conclusion that it was in C.K.J.'s best interest that she be returned to her mother's custody. For example, the court heard testimony regarding "the wishes of the child's parent or parents as to custody." Both C.K.J.'s mother and father testified at the hearings, as did Ronnie and Martha Jacobsen.

The court additionally heard testimony regarding C.K.J.'s "interaction and interrelationship" with her mother and her eleven-month-old half-sister, B.D., as well as with the Jacobsens and their children. Finally, testimony was offered regarding C.K.J.'s

8

"adjustment to home, school, and community," not only while in the care of the Jacobsens, but also while in her mother's care in Florida during April 1996. In addition, as the court noted in its findings of fact, it reviewed and relied upon both a written report and deposition testimony given by an investigating social worker who indicated she would not hesitate in recommending placing C.K.J. with her mother.

Operating as we do, under the presumption that the district court's custody determination is correct, we hold the court's finding that Danes had a good relationship with her daughter and was able to provide her with a suitable home adequately set forth the essential and determining facts upon which it relied in concluding it was in C.K.J.'s best interest that her mother receive custody. Further, having reviewed the entire record, we hold that substantial evidence existed to support the findings of fact upon which the court rested its custody determination. The court did not misapprehend the effect of the evidence, and our review of the record does not convince us the court made any mistakes. Accordingly, we hold the court's findings of fact are not clearly erroneous and will not be disturbed on appeal.

In a final argument attacking the court's application of the best interest test, the Jacobsens contend the District Court incorrectly deviated from its consideration of C.K.J.'s best interest by bestowing a preference upon the child's natural mother in reaching a custody determination. The Jacobsens point to the court's conclusion that it "must carefully protect parental rights" as evidence that it afforded Danes preference as a matter of law in the custody proceeding. The Jacobsens argue that, once they established their entitlement to

9

standing pursuant to § 40-4-211(4)(b), MCA, the fact that Danes was C.K.J.'s natural mother *should have had no bearing on the court's ultimate award of custody.* They maintain the court should only have considered those factors relevant to C.K.J.'s best interest, and erred in giving Danes preference as a matter of law.

Having held that the District Court properly set forth the essential and determining factors upon which it concluded C.K.J.'s best interest required returning her to the custody of her mother, we need not address the Jacobsens' final argument. Whether or not the Court afforded Danes preference as a matter of law is immaterial, as the court otherwise provided adequate support for its conclusion that it was in C.K.J.'s best interest to return to the custody of her mother.

ISSUE 2

Did the District Court err in finding that Danes did not abandon C.K.J. or relinquish her parental rights?

In its September 13, 1996, custody order, the District Court found that Danes "did not abandon or relinquish her parental rights to" C.K.J. The court further concluded that although Danes "abandoned her child . . . for a two-year period pursuant to § 40-4-211(1)(c)(i), and that constitutes neglect pursuant to § 41-3-102(5)(a)(ii) and (7), the abandonment was not meant to be permanent, but temporary." The Jacobsens contend the District Court's finding on this point is clearly erroneous and constitutes an abuse of discretion.

10

As discussed above, we have held that if a nonparent establishes standing to seek custody pursuant to § 40-4-211(4)(b), MCA, the court will base its ensuing custody determination exclusively on the best interest of the child pursuant to § 40-4-212, MCA. *In re R.R.K.*, 260 Mont. at 199-200, 859 P.2d at 1004. In *In re R.R.K.*, we specifically recognized that a "finding of unfitness [on the part of the natural parent] is not required" for a nonparent to successfully seek custody. *In re R.R.K.*, 260 Mont. at 199-200, 859 P.2d at 1004.

Having held the District Court correctly concluded it was in C.K.J.'s best interest that she be returned to the custody of her mother, we need not address the question of whether the District Court erred in finding Danes did not abandon her daughter or otherwise relinquish her parental rights.

We hold the District Court did not abuse its discretion in concluding it was in C.K.J.'s best interest to be transferred from the care and custody of her grandparents to that of her natural mother. Specifically, we hold the court properly set forth the essential and determining facts upon which it rested its conclusion regarding C.K.J.'s best interest, and did not err in failing to enter specific findings regarding certain factors set forth in § 40-4-212, MCA. Based on the foregoing, we affirm the decision of the District Court, and hold the court did not abuse it discretion in denying the Jacobsens' petition for custody.

_____
Justice

11

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

12

October 10, 1997

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

BARD G. MIDDLETON
ATTORNEY AT LAW
PO BOX 1084
BILLINGS MT 59103-1084

MALISSA DANES
20620 COUNTYLINE ROAD
BROOKVILLE FL 34610

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy